**Fred T. ALLSOP, Plaintiff,**

v.

**Herbert ERNST, Jr. Trustee, Defendant.**

**In the Matter of Stephen D. ROUDE-BUSH, Roudebush Insurance Company, Debtor.**

**Adv. No. 3–81–0407.**

**Bankruptcy No. 3–80–03809.**

United States Bankruptcy Court, S. D. Ohio, W. D.

June 9, 1982.

Herbert Ernst, Jr., Dayton, Ohio, trustee/defendant.

James R. Levinson, Dayton, Ohio, for plaintiff.

Winfield L. Kinney, III, Dayton, Ohio, for debtor.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter has been submitted to the Court upon a joint "Statement of Uncontroverted Facts" for determination on the record of the Trustee's counterclaim for turnover of Debtors' property. The original Complaint requested the Court to order the Trustee to abandon the subject property, but was filed under the mistaken belief that Trustee has possession of the subject property. The facts, as stipulated, are as follows:

1. [Plaintiff] is the son of Dean Allsop, deceased, and Lucille Allsop. In 1955, Lucille Allsop purchased a diamond ring for her husband. In November, 1979, after Dean Allsop's death, Lucille gave the diamond ring to her son. At that time [Plaintiff] resided in Indiana.

2. [Plaintiff] mentioned to his friend and insurance agent, Dave Jones, that he might want to sell the diamond ring. Jones introduced [Plaintiff] to [Debtor], as a person who knew about jewelry (including diamonds) and had experience buying and selling jewelry and diamonds.

3. In approximately June, 1979, [Debtor] had entered upon the activity of selling jewelry, including diamonds, for others on a commission basis. He received and made some telephone calls from Jaffe and Gross Jewelers, which organization buys, sells and appraises fine jewelry, including diamonds, at its place of business in the Winters Bank Tower, Dayton, Ohio. Those calls were made for the purpose of contacting potential buyers and sellers of jewelry.

4. At the time he filed for bankruptcy, November 28, 1980 [Debtor] owed at least $3,111.60 for gold jewelry he purchased between March 17, 1980 and April 11, 1980 for resale. In the summer of 1980, in approximately July, [Debtor] did business as "Stephen's Jewelry Company" and had business cards printed with that name and distributed. During the two months September—November, 1980, Roudebush rented a place of business at 2555 Miamisburg-Centerville Road with the intent of buying and selling jewelry. This business was called the "Gold Connection."

5. [Debtor] gained a reputation in the Dayton, Ohio area for his ability to sell

jewelry, which reputation was enhanced by "cocktail talk" at the King Cole Restaurant, also located at the Winters Bank Tower. During the summer of 1980, [Debtor] attempted to sell partial ownership in a diamond ring to [a third party]. That diamond ring was a different ring from the one [Debtor] obtained from [Plaintiff].

6. In December, 1979, [Plaintiff] gave [Debtor] possession of [Plaintiff's] ring with the understanding that [Debtor] would have the ring appraised and with instructions to attempt to locate a buyer for the ring and convey offers of purchase to [Plaintiff]. If any of the offers were acceptable to [Plaintiff], [Debtor] would then be paid a commission for locating the buyer. This agreement was a verbal one and there were no written instructions or security agreements prepared or filed with respect to the diamond ring. [Debtor] never offered to purchase, and did not purchase, [Plaintiff's] diamond ring or the diamond from the ring.

7. [Debtor] attempted to locate buyers to whom the ring or the diamond from the ring could be sold but he was unsuccessful. On December 25, 1979, [Plaintiff] telephoned [Debtor] and demanded that [Debtor] return the diamond ring. After further demands, an Indiana attorney representing [Plaintiff] demanded return of the diamond ring in April, 1980. During or about May, 1980, [Debtor] returned the ring portion to [Plaintiff], but the diamond which had been mounted in the ring had been removed and was not returned. On May 27, 1980, [Plaintiff] sued [Debtor] in the Common Please Court of Montgomery County, Ohio, to which Complaint [Debtor] filed an Answer.

8. In November, 1980, [Debtor] turned over the diamond which had been removed from [Plaintiff's] ring to [Debtor's] attorneys, who have maintained possession of the diamond from that date to the present. The Trustee has never seen or had possession of the diamond.

9. On November 28, 1980, this bankruptcy petition was filed. [Plaintiff's] Common Pleas Court action against [Debtor] was accordingly stayed.

10. The "wholesale replacement value" of the diamond as of January 12, 1981, was $13,800.00. A copy of description and appraisal by Weber's Jewelers, Inc. is attached as joint Exhibit "A."

The legal issue before the Court is twofold: first, whether O.R.C. § 1302.39 [U.C.C. § 2–326] is applicable to the facts *instanter*; and second, if so whether the facts substantiate a basis for exception as enumerated in O.R.C. § 1302.39(C)(1), (2) or (3) [U.C.C. § 2–326(3)(a), (b) or (c)], which provides, as follows:

(C) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this division are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this division is not applicable if the person making delivery:

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of section 1309.01 to 1309.50, inclusive, of the Revised Code.

The specific legal question in the case at bar is whether the relationship between Plaintiff, as consignor, and Defendant, as consignee, constitutes a "consignment sale" as defined in O.R.C. § 1302.39(C) [U.C.C.

2–326(3)]. If determined to be a consignment sale under O.R.C. § 1302.39(C) [U.C.C. 2–326(3)], then title to the diamond is "vested" in Debtor-consignee for purposes of a contest for the diamond between Debtor's creditors and Plaintiff-consignor, unless compliance with the provisions enumerated in O.R.C. § 1302.39(C) [U.C.C. 2–326(3)] is substantiated. *In Re McClain*, 1 U.C.C.Rep. 349, 49 Berks Co. L.J. 52 (D.C.E.D.Pa., Ref., 1956); See also, *Annot.,* 40 A.L.R.3d 1078 (1971); and Henson, *Secured Transactions,* § 3–13.

■ The Court initially notes that the instant transaction is a "true consignment," and not a consignment "intended as a security interest." O.R.C. §§ 1301.01(KK) [U.C.C. 1–201(37)] and 1309.02(B) [U.C.C. 9–102(2)]. Specifically, the traditional elements of a disguised credit transaction, (in particular, the "buyer-consignor's" ability to set the price, and his obligation to purchase regardless of resale, and the "seller-consignee's" right to refuse return), do not exist in the case at bar. See generally, *Annot.,* 40 A.L.R.3d 1078, 1099, § 6, and citation therein; and Henson *Secured Transactions,* § 3–13.

Article Nine of the Uniform Commercial Code [Chapter 1309 of the Ohio Revised Code] is inapplicable to a true consignment; and instead, therefore, either U.C.C. 2–326 [O.R.C. § 1302.39] of Article Two [O.R.C. Chapter 1302], if deemed applicable, or general principles of agency law determine the consignee's creditors rights to the consigned property. For two cases on facts nearly identical to those at bar, see *Bischoff v. Thomasson,* 31 U.C.C.Rep. 1, 400 So.2d 359 (Ala.S.Ct.1981), (holding U.C.C. 2–326 applicable); and *Manger v. Davis,* 30 U.C.C.Rep. 515, 619 P.2d 687 (Utah S.Ct.1980), (holding U.C.C. 2–326 inapplicable, and agency law controlling); See also *Annot.,* 40 A.L.R.3d 1078, 1088, § 3(b), and citation therein. Hence, is O.R.C. § 1302.39 [U.C.C. 2–326] applicable to the facts *instanter*?

It is the determination of this Court that the instant consignment transaction is not within the purview of O.R.C. § 1302.39 [U.C.C. 2–326]. Initially, the Court notes that a consignee in a true consignment is not a "buyer" as that term is used in O.R.C. § 1302.39(A) [U.C.C. 2–326], and the Trustee has accordingly not asserted rights thereunder. The question evolves, therefore, whether Debtor-consignee is statutorily deemed a "buyer" under O.R.C. § 1302.-39(C), thereby triggering the creditor rights asserted by the Trustee herein under O.R.C. § 1302.39(B) [U.C.C. 2–326].

■ It is the specific finding of this Court that O.R.C. § 1309.39(C) is inapplicable to the instant facts because Debtor-consignee did not "... maintain a *place* of business at which he deals in goods of the kind involved ..." during the relevant time period in issue. (Emphasis added). The Trustee argues that:

> Although the facts in this particular case showed that Debtor conducted his business in a rather unorthodox way, he did have a 'place of business at which he deals in goods of the kind involved (i.e. jewelry', [*sic*] that place of business either being Jaffee and Gross Jewelers, located in the Winters Bank Tower, or could even be the King Cole Restaurant, also located in Winters Bank Tower. Also during the summer of 1980, prior to filing bankruptcy, Debtor did business as "Stephen's Jewelry Company" and the "Gold Connection" at rented premises at 2555 Miamisburg-Centerville Road, for the purpose of buying and selling jewelry.

This Court is constrained to disagree and instead concludes that during the period the consignment was consented to by Plaintiff, Debtor "operated" without a "place," as contemplated by O.R.C. § 1302.39(C) [U.C.C. § 2–326(3)].

■ O.R.C. § 1302.39(C) [U.C.C. § 2–326] was enacted to protect creditors who have extended credit to a consignee on the basis of ostensible ownership of "inventory" composed of consigned goods. The policy behind placing the loss on the consignor in favor of the consignee's creditors is that ultimate liability should rest with the party who has "permitted" the consignment to take place without notice to the creditors,

i.e. upon the party who was in a position to prevent the loss to both parties. O.R.C. § 1302.39 [U.C.C. 3–326], however, is not intended to make consigned goods subject to creditor attack when those goods constituted "inventory" of a "transient" consignor.

When a consignor has no "place" of business, the Uniform Commercial Code is inapplicable, and the common law of agency is instead controlling. *Manger v. Davis, supra.* The Court is of the opinion that the fact that Debtor operated at a specific place of business for about two months prior to his Petition filing should not implicate O.R.C. § 1302.39 in light of the facts that Debtor-consignee did not operate in a "place" of business at the time of the consignment, and for nearly a full year subsequent to the consignment. Further, Debtor only began operating at a "place" of business ten months after Plaintiff demanded return of the diamond, and four months after Plaintiff initiated court action for its return. This Court is of the opinion that Debtor's operation of a "place" of business only occurred after conversion of consigned property by Debtor in excess of Debtor's authority as agent for Plaintiff, and that brief operation of a business with converted consigned goods, substantially after the consignment transaction should have been completed, is an incomplete basis to invoke the creditor protection of O.R.C. § 1302.39(B) [U.C.C. § 2–326(2)], especially since it has never been substantiated that the diamond was "inventoried" at the place of business, and since Debtor's business was transient in nature throughout the time period in which Plaintiff consented to the consignment, and considerably thereafter. Under the principles of agency, title to consigned goods subject to unauthorized action by the consignee remains in the name of the consignor free from creditor attack. *Manger v. Davis, supra.* The Court also notes that it appears from the record that the diamond was not in Debtor's possession at the time of Debtor's Petition filing, but instead was, and is, in possession of Debtor's attorney (not joined herein) pending resolution of Plaintiff's state court action for adjudication of Plaintiff's interest in the diamond.

*IT IS HEREBY ORDERED, ADJUDGED AND DECREED* that the instant Complaint for Trustee abandonment is DENIED, and that the Trustee's counterclaim for turnover of the diamond is also DENIED.

*IT IS FURTHER ORDERED* that Plaintiff is granted relief from the automatic stay of 11 U.S.C. § 362 to proceed with his suit in the Common Pleas Court of Montgomery County, Ohio for purpose of seeking the return of the diamond, since Debtor appears to have no property interest or equity in the diamond. 11 U.S.C. § 362(d)(2).