In re BRUSICH & ST. PEDRO JEWELERS, INC. t/a Joseph & Joseph Jewelers, Debtor.

NORTH STAR DIAMOND COMPANY, Plaintiff,

v.

BRUSICH & ST. PEDRO JEWELERS, INC., t/a Joseph & Joseph Jewelers, and Samuel Alper, Interim Trustee, Defendants.

Bankruptcy No. 82–04171G.
Adv. No. 82–2597G.

United States Bankruptcy Court, E.D. Pennsylvania.

March 24, 1983.

---

12. *See* Exh. P–5.

Edward J. DiDonato, Fell & Spalding, Philadelphia, Pa., for plaintiff, North Star Diamond Co.

Paul I. Guest, King of Prussia, Pa., for debtor/defendant, Brusich & St. Pedro Jewelers, Inc. t/a Joseph & Joseph Jewelers.

Lawrence J. Tabas, Philadelphia, Pa., for defendant, Samuel Alper, interim trustee.

Samuel Alper, Philadelphia, Pa., interim trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether goods consigned to a debtor by a creditor, where said creditor expressly retains title to the goods, are property of the estate under section 541(a) of the Bankruptcy Code ("the Code"). We conclude that, under the facts of the present case, the subject transaction is expressly governed by section 2326(c) of the Pennsylvania Commercial Code ("P.C.C.") and that, therefore, the consigned goods are subject to the claims of the debtor's creditors.

The facts of the instant case are as follows:[1] On June 30, 1982, Brusich & St. Pedro Jewelers, Inc., t/a Joseph & Joseph Jewelers ("the debtor"), and North Star Diamond Company ("North Star") executed a memorandum wherein North Star agreed to deliver eight (8) pieces of jewelry to the debtor. On September 3, 1982, the debtor filed a petition for relief under chapter 7 of the Code. On October 8, 1982, North Star filed a complaint for relief from the automatic stay under section 362 of the Code[2] alleging that the debtor lacked title and ownership in the eight pieces of jewelry and that, therefore, it is seeking an order directing the interim trustee to turn over said jewelry to it. After hearing North Star's case, the trustee moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a).

Section 541 of the Code provides that the commencement of a case under sections 301, 302 or 303 creates an estate and that the estate is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the date the case is commenced.[3] However, the existence and nature of the debtor's interest in property are determined by nonbankruptcy law. *See Butner v. United States,* 440 U.S. 48, 99

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Section 362(d) provides the conditions to be met in order for a party in interest to be entitled to relief from the automatic stay provisions of that section:

   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided that subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
   (2) with respect to a stay of an act against property, if—
   . (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization.
   11 U.S.C. § 362(d).

3. *See* 11 U.S.C. § 541(a)(1).

S.Ct. 914, 59 L.Ed.2d 136 (1979); 4 Collier on Bankruptcy ¶ 541.02[1] at 541–10 (15th ed.).

It is undisputed that the transaction entered into by the debtor and North Star was a consignment sale (N.T. 11/8/82 at 26, 30). Therefore, said transaction is governed by section 2326 of the P.C.C., which provides:

(a) Definitions.—Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(1) a "sale on approval" if the goods are delivered primarily for use; and

(2) a "sale or return" if the goods are delivered primarily for resale.

(b) Rights of creditors of buyer generally.—Except as provided in subsection (c), goods held on approval are not subject to the claims of the creditors of the buyer until acceptance; goods held on sale or return are subject to such claims while in the possession of the buyer.

(c) Consignment sales.—Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery:

(1) complies with an applicable law providing for the interest of a consignor or the like to be evidenced by a sign;

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing provisions of Division 9 (relating to secured transaction).

(d) Treatment of "or return" term.—Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this division (section 2201) and as contradicting the sale aspect of the contract within the provisions of this division on parol or extrinsic evidence (section 2202).

13 Pa.Cons.Stat.Ann. § 2326 (Purdon Pamphlet 1982).

Further, Collier's states that:

Section 2–326 provides that a consignment (not intended as a security interest) is treated like a sale-or-return contract for purposes of determining the rights of the buyer's creditors. While the goods are in the possession of the buyer or consignee, they are subject to the claims of the buyer's creditors unless the consignor complies with an applicable sign-posting statute, or the buyer is known by his creditors to be dealing in the goods of others, or the consignor complies with the filing provisions of Article 9.

4 Collier on Bankruptcy ¶ 541.08 at 541–42 (15th ed.)

Collier's concludes that "[e]ven if the consignor is successful in tracing the goods into the estate, the automatic stay of section 362 applies to prevent the consignor from ousting the estate of possession and its rights under the consignment contract." 4 Collier, *supra,* at 541–44.

North Star contends that section 2326 of the P.C.C. defines a "buyer" as "a person who buys or contracts to buy goods." 13 Pa.Cons.Stat.Ann. § 2103 (Purdon Pamphlet 1982). In support of its position, North Star relies on the case of *Allsop v. Ernst,* 20 B.R. 627 (Bkrtcy.S.D.Ohio, W.D.1982), wherein the court noted that a consignee in a true consignment is not a "buyer" within the purview of section 2–326 of the Uniform Commercial Code ("U.C.C."). However, the court then went on to state that "the question evolves, therefore, whether [the] Debtor-consignee is *statutorily* deemed a 'buyer' under [U.C.C. § 2–326(3) ]" (emphasis added). 20 B.R. at 630.

The *Allsop* court concluded that if the transaction before it was determined to be a consignment sale under the Ohio equivalent of section 2–326(3), of the U.C.C., then title to the goods in question vested in the debtor-consignee for purposes of a contest between the debtor's creditors and the plaintiff-consignor, unless the plaintiff-consignor complied with the exceptions enumerated in the Ohio equivalent of sections 2–326(3)(a), (b) or (c) of the U.C.C. 20 B.R. at 630.

■ The only means by which sections 2326(b) and (c) of the P.C.C. would not apply in the instant case—thereby giving North Star claim to the jewelry in question superior to the rights of the debtor's creditors—would be if North Star had complied with one of the exceptions enumerated in sections 2326(c)(1), (2) or (3) of the P.C.C. At trial of the instant complaint, it was established that North Star failed to comply with any of the section 2326(c) exceptions in that: (1) North Star's president testified that no sign was posted as required by section 2326(c)(1) of the P.C.C. (N.T. 11/8/82 at 13); (2) North Star's president testified that North Star did not file a financing statement within the terms of section 2326(c)(3) of the P.C.C. (N.T. 11/8/82 at 7); and (3) North Star failed to prove the debtor's creditors knew that the debtor was substantially engaged in selling the goods of others in accordance with section 2326(c)(2) of the P.C.C.

North Star next contends that even if the debtor is a "buyer" under the P.C.C. and even if the transaction at hand is a "sale on approval" within the meaning of section 2326(a)(1) of the P.C.C., the subject jewelry is still not subject to the claims of the debtor's creditors until acceptance under the terms of section 2326(b) of the P.C.C. In support of this argument, North Star refers us to the language contained in the June 8, 1982, memorandum between the debtor and North Star, which provides:

> The merchandise described on the reverse side is received on memorandum only, at the undersigned consignee's risk from all hazards, regardless of the cause of the loss or damage, only for examination and inspection by prospective purchasers, upon the express condition that all such merchandise shall remain the property of NORTH STAR DIAMOND CO. and shall be returned on demand, in full, in its original form.[4]

However, since we have already concluded that section 2326(c) of the P.C.C. specifically applies to the instant case, we hold that the June 8, 1982, memorandum and the language contained therein is not controlling and that the rights of the parties in the instant proceeding are to be governed by the provisions of the P.C.C. *See In re Aetco Equipment, Inc.,* 17 B.R. 230, 233 (Bkrtcy.W.D.Pa.1982). In any event, the express language of section 2326(c) provides that "[t]he provisions of this subsection are applicable *even though an agreement purports to reserve title to the person making delivery....*" (emphasis added) 13 Pa. Cons.Stat.Ann. § 2326(c).[5]

Finally, on February 8, 1983, North Star filed an application[6] for an order terminating the automatic stay pursuant to section 362(a) of the Code and Interim Bankruptcy Rule 4001(a),[7] alleging that the stay had

---

**4.** *See* Exh. A to North Star's complaint.

**5.** It appears from the record that the jewelry was consigned to the debtor for purposes of resale. *See* N.T. 11/8/82 at 26.

**6.** *See* note 7 *infra.*

**7.** Interim Bankruptcy Rule 4001(a) provides: Final Hearing. The stay of any act against property of the estate under Section 362(a) of the Bankruptcy Code expires 30 days after a final hearing is commenced pursuant to Section 362(e)(2) of the Code unless within that time at or after the final hearing the court determines that the stay be continued.
However, North Star's "application" for an order terminating the automatic stay is procedurally defective. Interim Local Bankruptcy Rule 4001(c) provides:
(c) APPLICABILITY OF RULE 4001(a). The stay of any act against property of the estate shall not expire as provided in subparagraph (a) of Rule 4001 unless the prayer of the complaint shall request relief from the

automatically terminated because we did not, within thirty (30) days after the filing of North Star's complaint or within thirty (30) days after the final hearing, order the stay continued. While section 362(a) has no such provision, section 362(e) of the Code provides:

> (e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—
>
> (1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and
>
> (2) such final hearing shall be commenced within thirty days after such preliminary hearing.

11 U.S.C. § 362(e).

While it is clear from the foregoing section that the passage of the prescribed time has terminated the *automatic* stay provided by section 362(a), this is not to say that the court is powerless to prevent North Star from taking possession of goods which are property of the estate. Section 105(a) of the Code gives the bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In *In re Kleinsasser,* 12 B.R. 452 (Bkrtcy.D.S.D.1981), the court held "[t]hat 11 U.S.C. § 362 and Interim Rule 4001(a) must be construed with other provi-

sions of the Code because it was the intent of Congress, upon enacting Chapter 11 of the Bankruptcy Act of 1978, that a debtor be given one meaningful opportunity to rehabilitate." 12 B.R. at 455. Similarly, the court, in *Memphis Bank & Trust Co. v. Brooks,* 10 B.R. 306 (D.C.W.D.Tenn.1981), held:

> Although this discretion [section 105(a)] is not unbridled, it has not been expressly limited by § 362. In the absence of an expression of contrary legislative intent, this court will not imply a limitation on the power of the bankruptcy court under these particular facts to issue a stay order after the termination of the § 362 automatic stay. Such broad powers are necessary for the bankruptcy court to effectively resolve cases before it.

10 B.R. at 308.

*See also In re Sandmar Corp.,* 16 B.R. 120, 122 (Bkrtcy.D.N.M.1981); *United Companies Fin. Corp. v. Brantley,* 6 B.R. 178, 190 (Bkrtcy.N.D.Fla.1980); *In re Walker,* 3 B.R. 213, 214 (Bkrtcy.W.D.Va.1980).

■ In the case *sub judice,* it would be inequitable to deprive the debtor's estate of property which, as previously demonstrated, is undeniably part of that estate under Pennsylvania law. This is especially true in light of the fact that the stay terminated only because of the court's inability to administer its heavy caseload within the time constraints set out under section 362(e) of the Code. Therefore, under section 105(a) of the Code, we will stay the relief sought by North Star.

■ In any event, the legislative history behind section 362(e) is quite clear. It states that "[s]ubsection (e) provides a protection for *secured* creditors that is not available under present law" (emphasis added). 2 Collier on Bankruptcy ¶ 362.08 at 362–52 (15th ed.). In the instant case, North Star is not a secured creditor within the meaning of section 362(e) (N.T. 11/8/82

automatic stay under Sec. 362(e) and the caption of a complaint for relief of the automatic stay shall, as required by Rule 7006, contain the following:

COMPLAINT FOR RELIEF FROM AUTOMATIC STAY UNDER SEC. 362(e), *as amended* by Procedural Order No. 15 (4/30/80), *as further amended* (6/26/80).

at 7) and we conclude, therefore, that North Star is not entitled to any relief thereunder.[8]

Consequently, after reviewing all the evidence presented, we will deny North Star's complaint for modification of the stay and its request therein to have the trustee turn over to it the jewelry in question.

---

**8.** Interim Bankruptcy Rule 4001(a) makes specific reference to § 362(e) of the Code.