**In re Sidney R. CLARK a/k/a Sidney R. Clarke, Debtor.**

**Bankruptcy No. 84–00880K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 10, 1987.

Alvin Freiberg, Phila., Pa., Local Counsel for debtor.

Kenneth F. Carobus, Juniper and Market Sts., Phila., Pa., Local Counsel for Systran.

Dale H. Schofield, Portland, Or., Oregon Counsel for Systran Financial Services.

James N. Esterkin, Portland, Or., Oregon Counsel for debtor/plaintiff.

James A. Redden, U.S. Dist. Judge, Portland, Or., James J. O'Connell, Phila., Pa., for Chapter 13 standing trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant Motion filed by a creditor seeking relief from the automatic stay arising under 11 U.S.C. § 362 of the Bankruptcy Code raises issues relevant to the determination of both the commencement and termination of the automatic stay pursuant to that section of the Code. We hold that the commencement of the stay occurs automatically at the time of the bankruptcy filing; that it renders all proceedings by creditors of debtors to enforce judgments, even those, as here, relating to post-petition claims, prior to their obtaining relief from the stay, violative of its terms and hence null and void; and that termination of the stay can occur only after a "notice and a hearing" in accordance with 11 U.S.C. §§ 362(d), (e). We therefore conclude that the stay protecting the Debtor here from execution against his property was at all times in place. We also conclude that the creditor's Motion for relief from the stay at this time should be denied.

As the record in this matter was made at a hearing on December 3, 1986, at which the Debtor, the only witness, testified and was cross-examined, and the Movant presented a considerable body of written material into evidence, we shall, per Bankruptcy Rule 9014 and 7052 and Federal Rule of Civil Procedure 52(a), draft this Opinion by rendering specific Findings of Fact, Conclusions of Law, and a Discussion describing our reasoning processes.

### A. FINDINGS OF FACT

1. The Debtor, SIDNEY R. CLARK, also known as SIDNEY R. CLARKE, filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code in this Court at the above-captioned case number on March 19, 1984.

2. Signing the initial bankruptcy papers, in addition to the Debtor, was one Cynthia E. Williams, who crossed out the word "attorney" on the forms utilized and typed in "Accountant for Petitioner" in those places where her name appears. We therefore conclude that Ms. Williams is not an attorney.

3. The Debtor and Ms. Williams were, at the time of the filing, and/or shortly

thereafter, both involved in some capacity with a business known as TRUCK–AUTO, INC., a Delaware Corporation. The Debtor testified that he was only an employee of the business and had no part in its management or financial affairs, and there is no evidence to the contrary.

4. The bankruptcy proceeding was filed in good faith and that the Debtor was ultimately represented by counsel therein. The Debtor's Plan was confirmed on September 13, 1984, and Charles S. King, Jr., Esquire, was allowed $400.00 in counsel fees for representation of the Debtor.

5. While listing numerous creditors on his bankruptcy schedules, the Debtor did not list the Movant here, SYSTRAN FINANCIAL SERVICES CORPORATION (hereinafter referred to as "the Movant"), among his creditors, nor has he, to date, sought to amend his Schedules to add the Movant as a creditor.

6. On April 3, 1985, unaware of the Debtors' bankruptcy filing, the Movant commenced a diversity action for breach of a Factoring Agreement and a Guaranty Agreement, entitled *SYSTRAN FINANCIAL SERVICES CORPORATION, an Oregon corporation, vs. TRUCK–AUTO, INC., a Delaware corporation, CYNTHIA E. WILLIAMS, an individual, SIDNEY R. CLARK, SR., an individual,* in the United States District Court for the District of Oregon, Civil Action No. 85–569RE, in which state the Movant is incorporated and has its principal place of business.

7. The Factoring Agreement and the Guaranty Agreement were both executed by Cynthia E. Williams only and were dated September 12, 1984. Pursuant to the Factoring Agreement, checks were drawn by the United States Commodity Credit Corporation in favor of Truck-Auto, Inc. in October, 1984, and were executed by Cynthia E. Williams only, the proceeds of which the Defendants in that action allegedly failed to remit to the Movant.

8. With the assistance of Ronald J. Harper, Esquire, a Philadelphia attorney, the Debtor prepared an Answer with New Matter in response to the Complaint, which he filed pro se in the Oregon action on May 3, 1985, denying that he had any part in this transaction. This pleading makes no mention of the Debtor's pending bankruptcy.

9. On December 11, 1985, upon Motion of the Movant, who apparently obtained default judgments against the Co-Defendants, the Clerk of the Oregon court entered a default against the Debtor for failing to appear at a Deposition scheduled on October 28, 1985, at the office of the Movant's counsel in Oregon, and, on December 12, 1985, the Court, per the Honorable James A. Redden, entered a default judgment in the amount of $16,957.65 against the Debtor.

10. On or about January 16, 1986, the Movant thereafter commenced proceedings to execute against the residential real estate of the Debtor in Abington, Pennsylvania, by means of execution process instituted in the Court of Common Pleas of Montgomery County, Pennsylvania, the situs of the Debtor's realty, at No. 86–00838, and the Debtor hired Pennsylvania counsel to attempt to prevent the sale of his home.

11. Thereafter, the Debtor also hired Oregon counsel, who, on May 23, 1986, filed a Motion to set aside the default judgment in the Oregon lawsuit.

12. On July 28, 1986, Judge Redden of the Oregon court granted the Motion on the condition that the Debtor reimburse the Movant for $3,472.41 in attorney's fees and costs and submit himself to a deposition thereafter.

13. Shortly thereafter, on or about August 1, 1986, the Debtor informed both his Pennsylvania counsel and his Oregon counsel about the pendency of the instant bankruptcy for the first time.

14. The Debtor failed to tell his counsel about the pending bankruptcy sooner because he was unaware that it would have any effect on the Oregon action. Hence, the actions of the Debtor were attributable to ignorance rather than any motive to deceive the Movant.

15. On August 29, 1986, the Debtor's Oregon counsel filed a Motion requesting the Oregon court to reconsider its Order of July 28, 1986, in light of the presence of the Debtor's bankruptcy and the attendant automatic stay in place at the time of the filing of this action.

16. On September 29, 1986, Judge Redden denied this Motion and, noting that the Debtor had not taken the actions set forth in his July 28, 1986, Order as conditions to obtain relief from the judgment, apparently reinstated the judgment entered against the Debtor.

17. On October 24, 1986, the Movant filed the Motion presently before us for disposition, pursuant to 11 U.S.C. § 362(d), seeking relief from the automatic stay which the Movant's counsel recognized was imposed by the Debtor's bankruptcy filing, asserting therein the status of a secured "judgment creditor" of the Debtor on the basis of the Oregon judgment.

18. This Court executed an Order Requiring Answer, filed per Local Rule 9014.-1(b)(2), on October 28, 1986, requiring an Answer to be filed by the Debtor within twenty (20) days of service, and the Clerk's Office filled in a hearing date of November 26, 1986, on the Notice of Hearing to Consider Motion form filed per Local Rule 9014.1(c).

19. On November 6, 1986, the Debtor, by his counsel, filed an Answer to the Movant's Motion.

20. The hearing on the Motion was continued, apparently by agreement of the parties, from November 26, 1986, to December 3, 1986, at which time it was, in fact, conducted.

21. On December 4, 1986, as per our oral indication that we would do so in the course of the hearing of December 3, 1986, we entered an Order directing that the automatic stay would remain in full force and effect pending disposition of this matter, that the Debtor could file a Brief in response to a Memorandum of Law submitted by the Movant at the hearing on or before December 17, 1986, and that the Movant could respond thereto on or before December 24, 1986.

### B. *CONCLUSIONS OF LAW*

1. The automatic stay arising from the Debtor's bankruptcy had no effect on the proceedings in the District of Oregon, since these involved an action to enforce rights pertinent to alleged post-petition obligations of the Debtor.

2. However, the automatic stay was in place, irrespective of the Debtor's failure to invoke it, as to all actions to obtain property of the Debtor's estate by execution and of any attempts to obtain a lien against property of his estate, in light of §§ 362(a)(3) and (a)(4), and hence all of the proceedings in the Court of Common Pleas of Montgomery County, Pennsylvania, effected to the ends of execution and obtaining a lien, are null and void and of no effect whatsoever.

3. The language of 11 U.S.C. § 362(e), if interpreted to effect an automatic termination of an automatic stay because of a lapse of the thirty-day period set forth in 11 U.S.C. § 362(e) arising solely to the failure of the Clerk's Office to list the matter for a hearing in timely fashion, would deprive debtors of property rights without due process of law and hence would be unconstitutional. Therefore, the protections afforded by the automatic stay may not be terminated prior to the opportunity for a hearing on same, per 11 U.S.C. § 362(d), and the stay of the Montgomery County proceedings effected by the instant bankruptcy case did not terminate at any time.

4. Alternatively, the Court's Order of December 4, 1986, was properly entered and would, if necessary, have had the effect of reinstating the stay.

5. The Movant, in light of the fact that its security interests obtained against the Debtor's property in execution by means of the Montgomery County action are void, is merely an unsecured creditor of the Debtor, which, having failed to meet its burden of showing cause therefor, is not entitled to

relief from the stay imposed by 11 U.S.C. §§ 362(a)(3) or (a)(4).

## C. DISCUSSION

The protection accorded to a debtor as a result of his filing of a bankruptcy petition is specifically designated as the *automatic* stay, per 11 U.S.C. § 362(a). As we stated most recently in *In re Stranahan Gear Co.*, 67 B.R. 834, 836 (Bankr.E.D.Pa.1986), quoting no less authority than the United States Supreme Court:

> We must observe, as we did in our recent Opinion in *In re Adams*, 65 B.R. 646, 648 (Bankr. E.D.Pa.1986), that the automatic stay is " 'one of the most fundamental debtor protections provided by the bankruptcy laws,' " *Midlantic National Bank v. New Jersey Department of Environmental Protection*, —— U.S. ——, 106 S.Ct. 755, 761, 88 L.Ed.2d 859, 867 (1986) (quoting S.Rep. No. 95–989, p. 54; H.R.Rep. No. 95–595, p. 340 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840, 5963, 6296), and hence can be compromised only when good reason exists to do so.

There are two (2) well-established aspects of the commencement of the automatic stay which demand our attention in our analysis of the Motion at hand. First is the entirely *automatic* nature of the attachment of the stay, which is necessary not only to protect the debtor, but also to protect the equal treatment and distribution of the debtor's assets, where appropriate, among all creditors. Thus, the Third Circuit Court of Appeals states, in *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982), that, although "[u]nder the old Bankruptcy Act, a debtor could waive a stay," the Code requires that

> relief from a stay must be authorized by the Bankruptcy Court to prevent certain creditors from gaining a preference for their claims against the debtor, to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

Moreover, the procedural history of the *St. Croix* case makes it clear that a court not only may, but *must*, raise the issue that an automatic stay attaches *sua sponte* if the parties, including the debtor, fail to do so. *Id.* at 447. Hence, the stay not only may but must be invoked by the court to protect the debtor—and the principle of equal treatment of all creditors— even in the face of a debtor's own dereliction in failing to raise the issue of the existence of the automatic stay as a defense to legal actions by creditors against him.

The *St. Croix* decision also emphasizes the power of the stay to halt actions against the Debtor in any court. As the St. Croix decision itself states, *id.* at 449, the actions of the Court of Appeals itself, as those of any court, are halted and all courts are prevented from making any disposition on the merits due to the impact of the automatic stay. *See also, e.g., NLT Computer Services v. Capital Computer Systems*, 755 F.2d 1253, 1256–59 (6th Cir. 1985) (federal district court action is subject to stay, and stay cannot be avoided by district court's withdrawal of reference); and *In re Dakota Industries, Inc.*, 31 B.R. 23 (Bankr. D.S.D.1983) (New Jersey bankruptcy court and district court held to have improperly proceeded in case involving South Dakota debtor).

It naturally follows that, if the stay arises without any action on the part of the debtor, and even perhaps in spite of his dereliction, that any actions which are taken by a creditor in violation of the automatic stay, even if mistakenly sanctioned by a court, are void. This concept was emphasized by the Supreme Court in a decision under the Act, *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940), where Mr. Justice Black, speaking for a unanimous court, held that a post-filing state court foreclosure proceeding "was not merely erroneous but was beyond its power, void, and subject to collateral attack" as a matter of federal law. It

should be noted that Mr. Justice Black was, some years later, the draftsman of the classic statement that federal courts must adhere to the principles of equity, comity, and federalism in refraining from interference with state proceedings. *Younger v. Harris*, 401 U.S. 37, 43–46, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). *See also In re Davis*, 691 F.2d 176, 178 (3d Cir.1982). It should also be re-emphasized, as the Court of Appeals holds in *St. Croix*, that the scope of the bankruptcy stay under the Code is more powerful and pervasive that it was under the Act. *See St. Croix, supra*, 682 F.2d at 448.

It is therefore not surprising that numerous cases decided under the Code have emphasized that any court proceedings within the scope of the stay which occur prior to a creditor's obtaining relief from the automatic stay, and hence while the stay remained in place, are not only voidable, but are totally and completely *void. See, e.g., Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n*, 804 F.2d 1487, 1490 (9th Cir.1986); *NLT Computer, supra*, 755 F.2d at 1259; *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); and *In re Grosse*, 68 B.R. 847, 850 (Bankr.E.D.Pa.1987). Hence, "[a]cts done in violation of the stay are void *ab initio* regardless of lack of knowledge of the filing of the petition" on the part of any creditors who, in ignorance, proceed against a debtor. *In re Advent Corp.*, 24 B.R. 612, 614 (1st Cir. BAP 1982). *See also, e.g., In re Miller*, 22 B.R. 479, 481 (D.Md.1982); *In re J & L Transport, Inc.*, 47 B.R. 51, 52–53 (Bankr. W.D.Wis.1985); and 2 COLLIER ON BANKRUPTCY, ¶ 362.03, at 362–77 (15th ed. 1986).

■ We do note, however, a demarcation between the proceedings in Oregon and those in Montgomery County, Pennsylvania. The Oregon proceedings constituted merely an effort by the Movant to assert rights against the Debtor in reference to alleged obligations which arose post-petition.[1] As such, those efforts clearly constituted assertion of a cause of action that "did not arise until after the filing of a bankruptcy petition," rendering the stay inapplicable to it. *In re M. Frenville Co.*, 744 F.2d 332, 334, 335 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). Therefore, we happily are not confronted with a situation where our findings are in any sense in conflict with the actions of Judge Redden in Oregon.

■ However, the proceedings to execute upon the Debtor's property in Montgomery County stand on a different footing. The Code, in 11 U.S.C. §§ 362(a)(3) and (a)(4), provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

.    .    .    .    .

(3) any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate; ...

These sections of 11 U.S.C. § 362(a), unlike §§ 362(a)(1), (a)(2), (a)(5), (a)(6), and (a)(7), are not limited in impact to claims that arose before the commencement of the case. *See Frenville, supra*, 744 F.2d at 338 n. 11. The Movant's execution process in Montgomery County is an act to create and enforce a lien against the Debtor's realty in the County, and an attempt to execute upon that same realty and thus obtain possession of property of the Debtor's estate. They are hence acts within the scope of §§ 362(a)(3) and (a)(4).

■ Application of the principles at pages 8–12 set forth *supra* to the instant

---

1. We note that the Movant, in these proceedings, failed to argue that the alleged obligations were post-petition, which would seem to have been a very significant point in its favor. However, we believe that we have a duty to raise obvious defenses to, as well as the issue of, the impact of the stay *sua sponte.*

factual setting results in the conclusion that the proceedings against the Debtor by the Movant in Montgomery County, Pennsylvania, although not those in Oregon, were void *ab initio* and hence are of no legal effect or consequence whatsoever and must be so declared. Although we find that innocent ignorance was the motivation of the Debtor here for failing to bring the presence of the stay to the attention of his counsel, and, in turn, the Movant sooner, we also hold that, irrespective of the Debtor's motives for failing to advise of his prior bankruptcy filing, the stay attached automatically and remained in place to render void the Montgomery County proceedings.

The Movant's suggestion that the Order of the Oregon Court of September 29, 1986, reaffirming the validity of its judgment despite the fact that, at this point, the bankruptcy filing had been brought to its attention, had any res judicata or other effect on our present disposition is therefore rejected. The Oregon court, in its consideration of matters outside the sphere of the automatic stay, could undoubtedly enter binding orders unaffected by the bankruptcy. However, the Oregon court's determinations did not purport to and in fact did not have any impact on the proceedings in Montgomery County, which were rendered void *ab initio* in light of the presence of the Debtor's bankruptcy.

Therefore, we have no hesitancy in holding that no legal concept—res judicata, waiver, estoppel, or any other arguments raised by the Movant—assists its cause in attempting to preserve the validity of the security interests obtained against the Debtor's real property by means of the Montgomery County execution process. That process is void and of no effect, the liens obtained thereby are similarly void, and the Movant cannot proceed to begin anew to execute against the Debtor's property unless the automatic stay is terminated and a new execution proceeding is successfully commenced thereafter. Unfortunately for the Movant, we are unwilling to allow it to take the first step in any new process, because we also hold that neither

had the automatic stay terminated nor are we willing to allow it to be terminated at this time.

The status of termination of the stay raises another provocative issue, *i.e.,* what procedural prerequisites must a party seeking relief from the stay satisfy before such relief will be granted? The Movant argues that, due to the combination of the fact that the hearing on its Motion was not scheduled by the Clerk's Office and not conducted until more than thirty (30) days after the filing of its Motion *and* the language of 11 U.S.C. § 362(e), which provides as follows, the stay is not only terminated, but also is irretrievably lost to the Debtor:

(e) *Thirty days after a request under subsection (d) of this section for relief from the stay of any act* against property of the estate under subsection (a) of this section, *such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing,* orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from the stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing (emphasis added).

We do not agree with the Movant. Having hereinbefore established the preciousness of the automatic stay and its cardinal importance to competing creditors as well as the debtor in a bankruptcy proceeding, we cannot conclude that the stay is so

fragile that it can be automatically undone by the mere act of the Clerk's Office in scheduling the hearing more than thirty (30) days after the Movant's § 362 Motion was filed.

■ We note that 11 U.S.C. § 362(e) provides that the automatic stay terminates thirty (30) days after not just a lapse of that period of time, but after "a request under subsection (d) of this section." That provision, 11 U.S.C. § 362(d), provides that a court may grant relief from the stay *only* "[o]n request of a party in interest and *after notice and a hearing*" (emphasis added). The phrase "notice and a hearing," per 11 U.S.C. § 102(1),

    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

    (B) authorizes an act without an actual hearing if such notice is given properly and if—

    (i) such a hearing is not requested timely by a party in interest; or

    (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;

Only by writing the phrase "after a request under subsection (d) of this action" out of the Code could we conclude that the automatic stay could be terminated upon the mere passage of thirty (30) days, *before* an opportunity for a hearing is accorded to the Debtor, i.e., before a hearing is even scheduled by the Clerk's Office. We are not willing to write this very meaningful phrase out of the Code. We therefore hold that the automatic stay may not be automatically terminated prior to the scheduling of a hearing on a Motion for relief from the stay pursuant to 11 U.S.C. § 362.

A contrary conclusion that, under any circumstances, such an important property right not only of the debtor but also of competing creditors as the automatic stay could be destroyed without " 'notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections' " at a hearing would violate the due process rights of the debtor and the competing creditors. *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 622 (10th Cir. 1984) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Hence, considering the constitutional ramifications of a contrary result, we interpret 11 U.S.C. § 362(e) as providing that, only after the debtor is accorded notice *and* given an opportunity for a hearing, per 11 U.S.C. § 362(d), does the thirty-day period referred to in 11 U.S.C. § 362(e) begin to run.

We do not believe that this holding upsets the finely-tuned balance of interests set forth in § 362 of the Code. It merely means, in practical terms, that, if the Clerk's Office fails to schedule a hearing on a § 362 Motion promptly, the burden is placed upon the creditor to see that this is done rather than placing a burden upon the debtor, who may not even have notice of the creditor's filing, to divine that the stay is in jeopardy. We believe that this result is the only conclusion consistent with our holding in *Stranahan Gear, supra*, 67 B.R. at 837, which is, in turn, consistent with all known authority, *see id.* at 836–37, that, irrespective of the presence of 11 U.S.C. § 362(g)(2), the creditor has the burden of producing evidence which articulates "cause" for relief from the stay before the creditor can obtain such relief. Hence we will not sanction an "automatic termination" of the automatic stay prior to the Debtor's being given an opportunity for a hearing on same under any circumstances.

We observe that our result is consistent with that taken in the vast majority of cases, although admittedly our reasoning process is different from that in the cases cited *infra*. This Court, per Chief Judge Goldhaber, held that, even if the automatic stay can be said to have terminated "only because of the court's inability to administer its heavy caseload within the time constraints set out under section 362(e) of the Code," the stay could be promptly reinsti-

tuted on the strength of 11 U.S.C. § 105(a) of the Code. *In re Brusich & St. Pedro Jewelers, Inc.*, 28 B.R. 545, 549 (Bankr. E.D.Pa.1983). *Accord: In re Kozak Farms, Inc.*, 47 B.R. 399, 402–03 (W.D. Mo.1985); *In re Bank Hapoalim B.M., Chicago Branch, v. E.L.I. Ltd.*, 42 B.R. 376, 378 (N.D.Ill.1984); *In re McNeely*, 51 B.R. 816, 821 (Bankr. D.Utah 1985); and *In re Victoria Grain of Minneapolis*, 45 B.R. 2, 6 (Bankr.D.Minn.1984). A similar result was also reached by Judge King of this Court in *In re Durkalec*, 21 B.R. 618 (Bankr.E.D.Pa.1982). We firmly reject the contrary, admittedly harsh, and, we submit, wooden reasoning of the court in *In re Wood*, 33 B.R. 320, 9 C.B.C.2d 493, 495–96 (Bankr.D.Idaho 1983).

We therefore hold that the failure of our Clerk's Office to schedule the hearing in this matter until a date slightly beyond the thirty-day period after the Movant's Motion was filed did not result in termination of the stay. This result certainly would be harsh in the instant case, where the Debtor filed a written answer opposing the Motion well within the thirty-day period and the time-frame set forth in the Order Requiring Answer, and the Movant itself acceded to a one-week continuance of the hearing, apparently due simply to the fact that it was scheduled on the eve of Thanksgiving. It is clear, under the authority cited above, that our Order of December 4, 1986, far from being, as the Movant suggests, "without force," was merely a further reiteration of the vitality of an automatic stay order which never terminated.

Finally, we reach the question of whether we should, at this juncture, grant the Movant's § 362 Motion and permit it to pursue property of the estate of the Debtor in Oregon or some other chosen forum, in a new proceeding like the one pending in Montgomery County which we hold here

has been rendered void *ab initio* by the terms of 11 U.S.C. §§ 362(a)(3) and (a)(4). On the strength of our decision in *Stranahan Gear* and the authority cited therein, 67 B.R. at 837–38, we decline to do so. As in *Stranahan Gear*, the Movant, stripped of any lien or other security interest in the Debtor's property by means of its void efforts to execute upon the Oregon judgment in Montgomery County, is merely an unsecured creditor. The status of the Movant here is therefore similar to that of the Movant in *Stranahan Gear*, and we therefore hold, as we did in *Stranahan Gear*, that the Movant here has failed to meet the threshold burdens per 11 U.S.C. § 362(d) necessary to entitle it to relief of allowing it to execute upon the Debtor's realty, as it seeks to do.[2] Therefore, the request for relief from the stay will be denied.

We shall therefore enter an Order, similar to that which we entered in *Stranahan Gear*, not only denying the Movant's Motion, but also declaring its actions in Montgomery County, Pennsylvania, initiated in violation of the automatic stay imposed by the Debtor's bankruptcy filing, null and void, and requiring it to terminate that action forthwith.

---

2. Although we give the Oregon judgment its due full faith and credit, we must concede that we are comfortable with the equities of this result, because the absence of the Debtor's signature on either the Factoring Agreement or the Guaranty Agreement suggests that it might be difficult for the Movant to prevail against the Debtor on the merits, having obtained the Oregon judgment only through the vehicle of suing the Debtor and seeking to obtain his deposition in a distant forum.