ALVIN B. RUBIN, Circuit Judge:
 

 River Hills Associates, a Chapter 11 debtor that lost its major asset, the River Hills Apartments, at a foreclosure sale, challenges the sale, contending that the automatic stay was still in effect at the time of the sale; that, if the stay was not still in effect, it was denied a hearing at which it would have objected to the lifting of the stay; and that the sale violated Texas law because it was irregular and at a grossly inadequate price. Concluding that none of these claims has merit, we affirm the decision of the district court.
 

 I.
 

 River Hills Associates (“Associates”) owned River Hills Apartments, situated in Austin, Texas, on which a third party, River Hills Apartments Fund (“Fund”), held a lien. Associates filed proceedings under Chapter 11 of the Bankruptcy Code on April 4, 1983, and the filing of this petition automaticálly stayed all proceedings against it.
 
 [1]
 
 On April 25, 1983, Fund asked the bankruptcy court to grant it relief from the automatic stay so that it could foreclose on the property. The first step in foreclosure under Texas law is posting the property for sale. On May 4, the bankruptcy court granted Fund permission to post the property, lifting the automatic stay for this purpose only. Fund then posted the requisite notice that the property would be sold on June 7. Subsequently, on May 17, Associates filed with the bankruptcy court a request for a jury trial on Fund’s motion to lift the automatic stay for the actual foreclosure sale. At a hearing held the next day, the bankruptcy court determined that it lacked jurisdiction to decide the jury-trial issue, and transferred the proceedings to the district court. At the same time, the bankruptcy court refused to extend the stay beyond the automatic 30-day limitation period of § 362(e).
 

 The district court received the file six days later, on May 24. Neither party requested an expedited hearing or took any other action in the district court until June 7, the date scheduled for the foreclosure sale. By that time the automatic stay had apparently expired (although Associates now contends that it had not terminated because of shortcomings in the judicial proceedings). On the morning of June 7, Associates asked the district court to grant a temporary injunction against the sale. The district court did so, conditioned on Associates posting a bond of $100,000 by 3:45 p.m. that day. When Associates failed to post the bond, the property was sold. Associates then instituted an action in the bankruptcy court, challenging the foreclosure sale. The bankruptcy court held that the sale was proper, and the district court affirmed.
 

 
 *706
 
 II.
 

 Section 362 of the Bankruptcy Code provides that the filing of a petition automatically operates as a stay of all proceedings against the debtor. Section 362(d) permits the bankruptcy court to grant relief from the automatic stay on the request of “a party in interest and after notice and a hearing.” Associates argues that this provision required the bankruptcy court to conduct a hearing before lifting the stay for the limited purpose of posting the notice of foreclosure, and that the posting of the notice was therefore invalid. For want of that nail, concludes Associates, Fund’s battle was lost because the later sale was rendered invalid.
 

 Section 362(d), however, does not require the bankruptcy court to hold a hearing in every case in which a creditor seeks relief from the automatic stay. The words “after notice and a hearing” in that section have a meaning different from the command derived from the phrase “the court shall hold a hearing,” which appears elsewhere in the Bankruptcy Code.
 
 [2]
 
 The Code defines “after notice and a hearing” as “after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.”
 
 [3]
 
 The primary purpose of this definition, as described in its legislative history, is to eliminate the direct involvement of the bankruptcy court in administrative matters such as the approval of requests for relief absent a dispute.
 
 [4]
 

 The record discloses no reason why a hearing was either necessary or appropriate in these circumstances. Associates received notice of the request for permission to post the property but it took no steps to oppose that request or to seek a hearing before the court granted that permission.
 
 [5]
 
 Furthermore, holding a hearing before permitting the posting of the foreclosure notice might have delayed the sale. Fund had proposed to hold the sale on June 7— the first Tuesday of the month, the only day on which Texas law allows foreclosure sales — and, in order to meet the state law requirement that notice be posted twenty-one days before a foreclosure sale, it was necessary to post notice no later than May 17. In addition, it is clear, and Associates does not contend otherwise, that the court’s failure to hold a hearing did not harm Associates because the order granting permission to post the notice explicitly provided that no further action would be taken against the property before the final determination of Fund’s right to relief from the automatic stay. Under these circumstances, therefore, the statute did not require the bankruptcy court to hold a hearing before allowing notice to be posted.
 
 [6]
 

 III.
 

 Associates also contends that Local Rule 5 of the Bankruptcy Court for the Western District of Texas required the court to allow it twenty days for responding to Fund’s motion, and thus to withhold its permission for posting until May 16. If this was required by the local rule, as is possible, failure to allow the twenty-day period was, for the reasons we have already given, harmless. The Federal Bankruptcy Rules adopt Fed.R.Civ.P. 61,
 
 [7]
 
 which provides that “no error or defect in ... anything done or omitted by the court” is ground for disturbing an order, “unless refusal to take such action appears to the court inconsistent with substantial justice.” We must “disregard any error or defect in the proceeding which does not affect the
 
 *707
 
 substantial rights of the parties.”
 
 [8]
 
 Associates has demonstrated no prejudice to any of its substantial rights by the mere posting of the notice, for nothing else could be done until the court lifted the stay on the sale itself.
 

 IV.
 

 The district court’s failure to hold a hearing on Fund’s motion to lift the automatic stay for the actual foreclosure sale did not continue the stay in effect. Section 362(e) provides that the stay terminates thirty days after a request for relief “unless the court, after notice and a hearing, orders such stay continued in effect.” The automatic stay therefore terminates even if the court fails to hold a hearing, whether its failure to do so results from the parties’ failure to importune the court — due to their own inadvertence or to the absence of a dispute — or from the court’s own inadvertence.
 
 [9]
 
 The debtor is not without a remedy if the stay terminates, because the court retains, at the least, authority under 11 U.S.C. § 105(a) and Fed.Bankr.Rule 7065 to enjoin action against the debtor’s property.
 

 Associates contends that the thirty-day period before dissolution of the automatic stay could not have run before the June 7 foreclosure sale because § 362(e) requires the period to run entirely in
 
 one
 
 court, and the transfer of the proceedings from the bankruptcy court to the district court on May 18 caused the period to start running anew. The statute simply does not support this argument; It states merely that the stay “is terminated ... unless
 
 the
 
 court ... orders such stay continued.” As used in this phrase, the article “the” is not restrictive but refers to any court before which the issue is pending. Were Associates’ interpretation adopted, giving renewed life to the automatic stay, debtors might secure its resuscitation merely by filing last minute requests that require transfer to a different court.
 

 V.
 

 Although Associates requested a hearing before the bankruptcy court on the merits of lifting the automatic stay for the actual foreclosure sale, the district court’s failure to hold a hearing is not reason to set the foreclosure sale aside. Section 362(e) provides for the automatic expiration of the stay in order to avert delay.
 
 [10]
 
 The debtor must, through “aggressive litigation management,” obtain a timely hearing if it wants to ensure the continued protection of the automatic stay.
 
 [11]
 
 Although the Bankruptcy Code imposes a duty upon the court to act within the appropriate time limit,
 
 [12]
 
 it is the debtor’s burden to call the issue to the court’s attention if it desires that the stay be continued.
 
 [13]
 
 Were this responsibility not on the debtor, the debtor would be able to file motions that would delay the hearing on the creditor’s request to lift the stay, silently await the passage of the thirty day period, and then urge the invalidity of the subsequent proceedings. By silence and inaction, the debtor might thus obtain a delay tantamount to an extension of the automatic stay. Associates filed the jury-trial request that occasioned transfer of this case to the district court. It did not pursue its request for a hearing in the district court or take any steps to call the issue to the district court’s attention. The district court’s failure to hold a hearing in the absence of action by Associates is not, therefore, sufficient reason to set aside the sale.
 

 Associates contends, alternatively, that, even if a debtor ordinarily has the burden of requesting an expedited hearing, its case is different because the bankruptcy
 
 *708
 
 court told the parties, at the May 18 preliminary hearing, that it would: (1) set out the emergency nature of the hearing request in its order in order to call this to the attention of the district court; and (2) extend the automatic stay under § 362(e). Associates argues that it should not, therefore, be penalized for its detrimental reliance on these statements by the bankruptcy court.
 

 The record, however, does not support the factual premises of Associates’ detrimental-reliance argument. At the May 18 hearing, the bankruptcy court made neither of the statements attributed to it. The court merely noted that counsel was capable of calling the district court’s attention to the urgency of the request for a hearing, and stated its willingness to incorporate such a notification in its order if requested by counsel. In addition, the court explicitly stated that its hearing qualified as a preliminary hearing for purposes of the requirement in § 362(e) that a hearing be held before the automatic termination of a stay, but that the court was not entering an order continuing the stay.
 

 The fact that the bankruptcy court held such a preliminary hearing did not require it or the district court thereafter to hold a final hearing or to continue the stay an additional thirty days. Section 362(e) terminates the automatic stay unless the court orders it continued
 
 either
 
 pending the conclusion of the final hearing
 
 or
 
 as a result of the final hearing. It permits the court to hold a preliminary hearing if, because of exigent circumstances or for any other reason, the final hearing cannot be held when the matter is first heard, and, to avoid delay, requires the final hearing to be held within thirty days thereafter. If, however, at the preliminary hearing, the automatic stay is not continued in effect, the thirty-day death knell continues to run. The debtor dissatisfied with this denial must then seek a further, or final, hearing within the thirty-day period. Otherwise, the provision for a preliminary hearing would lead to the anomalous result that, if the court holds no hearing, the original thirty-day period continues to run, but if it holds a preliminary hearing and refuses to continue the stay, the period is extended for at least another thirty days.
 

 VI.
 

 The $100,000 bond upon which the court conditioned the temporary restraining order against the foreclosure sale was not excessive. As Associates concedes, the potential damages that it covered amounted to $50,000 per month, and, given the length of the requested restraint, two months would have elapsed between June 7 and the time the property could again be sold.
 

 The time allowed to post the bond was not unduly short in view of the circumstances. Associates had done nothing between May 18, the date of the hearing in the bankruptcy court, and June 7 — a total of twenty days — to bring its request for a hearing to the district court’s attention. It had no reason to believe that the bankruptcy court had extended the stay at the May 18 hearing. Nevertheless, it waited until the day of the foreclosure sale to request the TRO from the district court. Had the court not required the bond to be posted that afternoon, a TRO would in effect have been granted without a bond, for, even if the court had required bond to be provided the next day and refused at that time to grant the TRO, it would have been necessary to postpone the foreclosure sale until the next date allowable under Texas law, one month later.
 
 [14]
 
 Such an action would have denied Fund any protection for potential damages, solely because of Associates’ preceding inaction.
 

 When it entered the TRO, the district court did not err in rejecting Associates’ request that it order the use of funds of the estate to satisfy the bond. Although Associates introduced no evidence of such
 
 *709
 
 a request at the trial of this action,
 
 [15]
 
 we may assume the request was made and rejected, for the district court’s refusal to authorize the use of these funds would not have been an abuse of discretion. Such a use of the funds would have taken them away from those creditors who had preexisting liens on them.
 

 Associates asserts that Fund improperly interfered with its efforts to obtain money for the bond, and that, when it attempted, during the afternoon of June 7, to obtain court protection from this interference, the court erroneously refused to grant a hearing. The record does not support the allegation of improper interference. The evidence shows merely that Fund at some time advised the manager of Associates’ funds that, were he to use the funds to satisfy the bond, he would be held in contempt of court. Considering the court’s failure to authorize use of funds of the estate for the bond, this representation was accurate.
 

 VII.
 

 Retreating to state law, Associates asserts that the foreclosure sale should have been set aside under Texas law because it was irregular and was for a grossly inadequate price. Acknowledging that the initial foreclosure sale cannot now be set aside, however, because the bankruptcy court later allowed the property to be resold to a third party, Associates asserts that it is entitled to damages in the amount of the difference between the market price of the property and the price at which it was sold at foreclosure.
 

 Once again the foundation of the argument is flawed. The foreclosure sale was neither irregular nor at a grossly inadequate price. All of Associates’ allegations of irregularity are based on claims that we have already
 
 rejected—i.e.,
 
 that the bankruptcy court failed to grant it a hearing on the lifting of the automatic stay, and that the district court required an excessive bond, allowed insufficient time to post the bond, and failed to authorize the use of estate assets to satisfy the bond.
 

 The price, if indeed it was at all insufficient, was not so inadequate as to warrant setting aside the sale. Fund, which bought the property, bid $2,100,000 as a credit against the then existing indebtedness due it, subject to a first lien debt of $5,506,111, attorney’s fees of $300,000 and a tax debt of $380,618. The total price was therefore $8,286,729. The bankruptcy court found that the value of the property was $9,250,000, apparently accepting the valuation of Fund’s expert witness. It was within the trial judge’s discretion to weigh the evidence, and we sit in second judgment on his determination of value only when it is so far afield as to be clearly erroneous. After a review of the expert testimony at trial, we agree with the district court that the bankruptcy court’s decision to rely on the appraisal by Fund’s expert does not demonstrate error.
 

 For these reasons, we AFFIRM the decision of the district court.
 

 [1]
 

 . 11 U.S.C. § 362(a) (1986).
 

 [2]
 

 .
 
 In re Sullivan Ford Sales,
 
 2 B.R. 350, 354 (Bankr.D.Me.1980).
 

 [3]
 

 . 11 U.S.C. § 102(1)(A) (1986).
 

 [4]
 

 . Senate Comm, on the Judiciary, Bankruptcy Reform Act of 1978, S.Rep. No. 989, 95th Cong., 2nd Sess. 27-28 (1978),
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin.News 5787, 5813;
 
 In re Sullivan Ford,
 
 2 B.R. at 354.
 

 [5]
 

 .
 
 Cf. In re Turner,
 
 15 B.R. 265, 267 (Bankr.W.D. Mo.1981).
 

 [6]
 

 .
 
 Cf. id.
 

 [7]
 

 . Bankr.Rule 9005, 11 U.S.C. (1986).
 

 [8]
 

 . Fed.R.Civ.P. 61.
 

 [9]
 

 .
 
 See In re Sandmar Corp.,
 
 16 B.R. 120, 122 (Bankr.D.N.M.1981);
 
 In re Feimster,
 
 3 B.R. 11, 12 (Bankr.N.D.Ga. 1979).
 

 [10]
 

 .
 
 See
 
 2 Collier on Bankruptcy ¶ 362.08, at 362-60 (15th ed. 1986).
 

 [11]
 

 .
 
 See In re Sandmar Corp.,
 
 16 B.R. at 122;
 
 cf. In re Codesco, Inc.,
 
 24 B.R. 746, 750-51 (Bankr. S.D.N.Y.1982).
 

 [12]
 

 .
 
 In re Sandmar Corp.,
 
 16 B.R. at 122;
 
 In re Feimster,
 
 3 B.R. at 12-13.
 

 [13]
 

 .
 
 See In re Sandmar Corp.,
 
 16 B.R. at 122-23.
 

 [14]
 

 .
 
 See
 
 Tex.Prop.Code Ann. § 51.002 (Vernon 1987);
 
 cf. FLR Corp. v. Blodgett,
 
 541 S.W.2d 209, 215 (Tex.Civ.App.1976, writ ref'd n.r.e.).
 

 [15]
 

 .
 
 See Thompson
 
 v.
 
 Chrysler Motors Corp.,
 
 755 F.2d 1162, 1174 (5th Cir.1985);
 
 Covington v. Cole,
 
 528 F.2d 1365, 1373 n. 19 (5th Cir.1976).