**In re Howard Allen ALDERSON, Debtor.**

**Bankruptcy No. 91BK–13126.**

United States Bankruptcy Court, W.D. Louisiana, Shreveport Division.

April 12, 1992.

John M. Frazier, Peatross, Greer & Frazier, Shreveport, La., for debtor.

Curtis R. Shelton, Cook, Yancey, King and Galloway, A Professional Law Corp., Shreveport, La., for Commercial National Bank in Shreveport.

REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter comes before the Court on the Motion by the Commercial National Bank in Shreveport ("CNB") for relief from the automatic stay and for abandonment of property from the estate. Objections were filed to the Motion by the Debtor; Judith W. Alderson, debtor's spouse, from whom he is separate in property; and Robert A. Mackey. Debtor filed a Motion to Strike the Motion and to have the same declared null *ab initio*. This Court signed an order on March 31, 1992, setting the Motion to Strike for a hearing.

Over the strenuous objection of CNB, the hearings on the Motion to Strike and Relief from the Stay and for Abandonment were consolidated for evidentiary purposes. At the conclusion of the hearing, the matters were taken under advisement.

This is a Core Proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A) and (G). This Court has jurisdiction pursuant to 28 U.S.C. Section 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these Reasons, the Motion to Strike will be denied. The Motion for Relief from Stay and for Abandonment will likewise be denied and the objections sustained.

## PROCEDURAL HISTORY

The history and background of the subject motions are necessary for an understanding of the issues before the Court. Debtor filed a voluntary petition for relief under Chapter 11 on November 20, 1991. This case was routinely assigned to Judge Stephen V. Callaway, Chief Bankruptcy Judge for the Western District of Louisiana.

Commercial National Bank in Shreveport filed a Motion to Lift Automatic Stay and for Abandonment on February 14, 1992 in Shreveport, Louisiana. Counsel for the Movant, Mr. Curtis Shelton, certified that on the 21st day of February, 1992, he served notice of the hearing to all parties on the mailing list. The Notice of Hearing on Motion to Lift Automatic Stay and for Abandonment provides for a hearing on the 31st day of March, 1992, at 9:30 a.m. This notice and the certificate of notice were filed in Shreveport on February 24, 1992. A supplemental certificate of notice was filed on March 10, 1992.

On February 24, 1992, Judge Callaway disqualified himself from hearing the motion in question and signed an Order setting a hearing for March 31, 1992, at 9:30 a.m., before the undersigned. That order was filed on February 25, 1992.

A conference call was held on March 25, 1992, between the undersigned, Mr. Shelton, Mr. John Frazier, counsel to debtor and Mr. R. Joseph Naus, Counsel to Judith Alderson. Mr. Shelton maintained the automatic stay had lapsed pursuant to 11 U.S.C. Section 362(e). The Court entered an Order deferring all matters to March 31, 1992. That order continued the "status quo" in effect until the date of the hearing by consent of the parties. The parties were directed to file briefs regarding the Section 362(e) issue. The Motion to Strike was filed on March 30, 1992.

## STIPULATIONS

The parties have stipulated to the following facts:

1. The motion and memorandum were filed February 14, 1992 by CNB.

2. Upon filing, a copy of the motion was mailed to counsel for debtor.

3. A hearing date was not assigned because Judge Callaway was required to recuse himself.

4. The hearing date was coordinated between the judges' offices and counsel for defendant.

5. The date furnished was the first available date on the undersigned's calendar.

6. The date is contained in the order of Judge Callaway recusing himself.

7. The Motion was noticed and a certificate of notice was filed February 24, 1992.

8. The Notice was mailed February 21, 1992, and was received by counsel to debtor on February 24, 1992. A notice was sent to Mrs. Alderson on February 21, 1992.

9. On March 3, 1992, Counsel for Mrs. Alderson filed a request for notice.

10. On March 5, 1992, Counsel for CNB furnished additional notice to Mrs. Alderson at her attorney's address.

11. Mrs. Alderson is separate in property from debtor by an instrument filed prior to her marriage. She is also a secured creditor.

12. A supplemental certificate of service was filed on March 10, 1992.

13. The first communication between counsel to debtor and CNB other than the notices of hearing was the conference call on March 25, 1992, at approximately 3:00 P.M.

14. The property affected by the motion is unimproved acreage adjacent to the intersection of Interstate Highway 49 and Bert Kouns Industrial Loop in Shreveport, Louisiana.

15. Debtor has filed a plan and disclosure statement pursuant to which a portion of the property is to be transferred to CNB. The Court may take judicial notice of the provisions of same.

16. The remainder of the property is to be transferred to the other creditors, Mrs. Alderson and Mr. Mackey.

17. CNB holds a vendor's lien. The mortgage documentation is annexed to the proof of claim filed on its behalf.

18. CNB, Mrs. Alderson, and Mr. Mackey are parties to a settlement agreement entered in December of 1989. Exhibit CNB 1. An addendum to the agreement is filed as Exhibit CNB 2.

19. The case was filed February 20, 1991. On that same date, a Sheriff's Sale pursuant to executory process had been scheduled for 10:00 a.m., on the subject property.

20. CNB's appraisal on the subject property reflects a value of $972,000. The value of the portion of the property North of the Bert Kouns Industrial Loop is appraised at $205,000.00 and the value of the property South of the Bert Kouns Industrial Loop is appraised at $767,000.00 in the CNB appraisal.

21. Debtor's appraisal shows $1.265 Million for the entire tract. The tract lying North of Bert Kouns is valued in debtor's appraisal at $340,000.00. The portion lying South of the Loop is appraised at $925,000.

22. Approximately 5.6 acres is proposed by the plan to be given to CNB and is reflected in the appraisal done by debtor as having a worth of $635,000.

23. Under the plan, any transfers would occur on the later of the effective date of the plan or when CNB's claim is finally allowed. The effective date is in turn defined as 60 days after the confirmation date. The confirmation date is defined as the date when the order of confirmation becomes final and "nonappealable." There is no definition in the plan of the phrase "finally allowed." No objection has been filed to the claim of CNB.

24. CNB is an oversecured creditor. The extent to which it is oversecured is disputed.

25. There are encumbrances in favor of Mr. Mackey and Mrs. Alderson. The value of the collateral is less than the total value of the encumbrances.

26. A hearing is set for debtor's proposed Disclosure Statement on May 4, 1992.

27. The appraisals of CNB, Exhibit CNB 3, is offered into evidence without objection, subject to cross-examination. The appraisers were stipulated to be competent.

28. For purposes of the hearing, as of April 1, 1992, CNB's claim, exclusive of any attorney fees and costs after filing, is $634,558.00. CNB claims interest per them for $115.85. (Debtor does not stipulate to this figure, but concedes it is "close.")

29. All portions of the case record referred to are offered into evidence by reference.

## EXHIBITS

The following exhibits were offered:

Alderson 1: Appraisal of Two Tracts of land.

Alderson 2: Review of Appraisal.

CNB 1: Settlement agreement between CNB, Mrs. Alderson and Mr. Mackey.

CNB 2: Addendum to the agreement.

CNB 3: Appraisal.

Joint 1: Real Estate Mortgage by Howard Alderson in favor of Robert Mackey, Sr., for $137,814.55.

Joint 2: Real Estate Mortgage by Howard Alderson in favor of Judith Alderson for $137,714.55.

Joint 3: Real Estate Mortgage by Howard Alderson in favor of Robert Mackey, Sr. for $137,614.55.

Joint 4: Collateral Mortgage by Howard Alderson for $750,000.

These reasons now turn to the consideration of the first question posed for decision: what is the effect of 11 U.S.C. Section 362(e)? Obviously a determination that the stay in this matter has automatically lapsed would pretermit the consideration of other matters before the Court.

## I. IS THE LAPSE OF THE STAY UNDER SECTION 362(e) AUTOMATIC?

### A. 11 U.S.C. Section 362(e)

"Section 362(e) requires that thirty days after a request for relief from the stay of subsection (a) of any act against property of the estate the stay be automatically vacated unless the court after notice and a hearing orders such stay continued in effect pending, or as a result of, a final hearing."

*Collier on Bankruptcy*, 15th Edition, Section 362.08, at 362–73.

In *In re River Hills Apartments Fund*, 813 F.2d 702 (5th Cir.1987), the creditor requested relief from the automatic stay on April 25, 1983 so that it could foreclose on the property of the debtor. On May 4, the bankruptcy court granted creditor permission to post the property,[1] lifting the automatic stay for that purpose only. The property was posted to be sold on June 7. On May 17, debtor requested a jury trial on the lift stay motion. The bankruptcy court determined that it lacked jurisdiction to decide the jury trial issue and transferred it to the district court. The bankruptcy court refused to extend the stay beyond the automatic thirty-day limitation period

of Section 362(e). On June 7, debtor requested a temporary injunction against the sale which the district court granted conditioned upon the posting of a bond. The debtor failed to post the bond and the property was sold. The Fifth Circuit held that the automatic stay terminates under Section 362(e) "even if the court fails to hold a hearing, whether its failure to do so results from the parties failure to importune the court—due to their own inadvertence or to the absence of a dispute—or from the court's own inadvertence." *Id.* at 707. The court went on to say the "debtor is not without a remedy if the stay terminates because the court retains, at the least, authority under 11 U.S.C. [Section] 105(a) and Fed.Bankr.Rule 7065 to enjoin action against the debtor's property." *Id.*

In an earlier case, *Matter of Martin Exploration Co.*, 731 F.2d 1210 (5th Cir.1984), the request for relief from the stay was filed October 21, 1982. On November 12, 1982, the final hearing was held but the bankruptcy court did not render a judgment until December 12, 1982, also, it did not enter judgment until December 21, 1982. The Court, noting that "there was no preliminary hearing with attendant findings as to [movant's] probability of success, which would have operated to extend the time for a final hearing and entry of judgment," held that the stay terminated 30 days after the filing of the request. The Court observed:

"Under 11 U.S.C. Section 362(e), an automatic stay terminates thirty days after a request for relief from the stay, 'unless the court, after notice and hearing, orders such stay continued in effect pending, or as a result of, a final hearing....' This statutory scheme creates two options to avoid automatic termination of the stay. (1) A final hearing may be held and the order entered within 30 days of the request for relief. (2) A preliminary hearing may be held within thirty days of the request for relief...."

731 F.2d 1210 at 1213.

Other decisions view the automatic lift of stay differently. In *In re Clark*, 69 B.R.

---

1. Under Texas law the first step in foreclosure is     posting the property for sale.

885 (Bkrtcy.E.D.Pa.1987) a postpetition judgment creditor filed for relief from the stay on October 24. The Clerk's Office set the hearing date for November 26. The hearing on the Motion was continued by agreement of the parties. The court noted that Section 362(e) provides that "the automatic stay terminates thirty (30) days after not just a lapse of that period of time, but after 'a request under Subsection (d) of this Section.'" *Id.* at 892. 11 U.S.C. Section 362(d) provides that a court may grant relief from the stay only on "request of a party in interest and after notice and a hearing." *See* 11 U.S.C. Section 102(1).

The *Clark* Court held that "the automatic stay may not be automatically terminated prior to the scheduling of a hearing on a Motion for relief from the stay pursuant to 11 U.S.C. [Section] 362." *Id.* at 892. It reasoned that only by writing out of the Code the phrase "after a request under Subsection (d) of this Section" could it conclude that the automatic stay could be terminated upon the mere passage of thirty days, before an opportunity for a hearing is accorded to the debtor. The court notes a conclusion contrary to its holding would violate the due process rights of the debtor and the competing creditors. In the instant case, both debtor and Judith Alderson argue that the lifting of the stay by the mere expiration of time is a violation of due process of law. *See* "Memorandum in Opposition" filed March 30, 1992, and "Answer and Opposition" filed March 25, 1992.

The *Clark* Court further observed that the burden of scheduling a hearing on a Section 362 Motion promptly is on the creditor.[2] The court held that the omission of the clerk's office, in failing to schedule the hearing, within the 30 day period after the movant's Motion was filed, did not result in termination of the stay.[3]

*Martin,* discussed *supra,* also noted the power of the bankruptcy court to issue a new stay under 11 U.S.C. Section 105. Some Courts reach a different result on that issue. In *In re Wood,* 33 B.R. 320 (Bkrtcy.D.Idaho 1983), the creditor filed an action seeking relief from the Section 362(a) stay. No order was issued following a preliminary hearing within the 30 days following service of the request for relief. The court stated that when Section 362(e) applies, the stay is terminated by operation of law. The court found that it could not use its equitable powers under Section 105(a) to nullify the stay termination resulting from the operation of Section 362(e).

### B. Need for a Hearing:

What is the Effect of the Local Rules?

The finding of a need for a hearing on the lifting of the stay is consistent with the Local Rules of Court Applicable to Bankruptcy Proceedings in the Western District of Louisiana. Local Rule 2.2 D provides that unless relief from stay is obtained by default[4] the movant must, at an actual hearing, present a *prima facie* showing of lack of equity.

The Local Rules further provide that the Court "may refuse to hear any opposition to a motion for relief from the stay or a *well supported* motion may be granted by default prior to hearing or at hearing unless an objection or other opposition is filed and is served on the movant at least five (5) days before the date set for hearing...." Local Bankruptcy Rule 2.2(B). Further, the Local Rules state: "If the motion is timely and properly controverted ... [t]he initial hearing will, in most cases, be a final hearing. The parties, unless they agree otherwise prior to the hearing, should be prepared to proceed to final hearing of the issue...." *Id.* at 2.2(E).

### C. Can the 30 Day Requirement be Waived by the Creditor?

In *In re McNeely,* 51 B.R. 816 (Bkrtcy.D.Utah 1985), a preliminary hearing on the

---

**2.** This is supported by the court in *Small, infra,* which states the debtors have absolutely no duty whatsoever to insure that a hearing is held on a motion for relief from automatic stay pursuant to 11 U.S.C. Section 362, rejecting *Wood.*

**3.** "We firmly reject the contrary, admittedly harsh, and, we submit, Wooden reasoning of the court in *In re Wood,* 33 B.R. 320 ..." *Clark* at 893.

**4.** A remedy that exists in the rules but is rarely if ever used.

creditor's motion for relief was held within 30 days, the court continued the stay for a period of 30 days. The creditor failed to schedule a final hearing on the court's calendar, the thirty day deadline for final hearing expired and no order continuing the stay was entered. The court found that "[a] creditor who fails to schedule a final hearing within the thirty day period may impliedly waive its right to automatic termination under Section 362(e)." The court determined relief from the stay proper, pretermitting a decision as to whether or not it had actually lapsed.

The Court in *In re Wilmette Partners*, 34 B.R. 958 (Bkrtcy.N.D.Ill.1983), also found that a creditor could waive his rights under Section 362(e). The creditor filed a complaint to lift the automatic stay on July 18, 1983. Hearing was set for August 8, 1983, counsel for the debtor failed to appear. The court asked if counsel to creditor had an objection to a continuance, there being none, the hearing was continued to September 7, 1983. The court found that the creditor implicitly waived its right to object to the timeliness of the hearing. The court noted that had it not decided the case on Section 362(e) grounds, an identical conclusion would have been reached by the court under the provisions of Section 105(a).

In *In re Wedgewood Realty Group, Ltd.* 878 F.2d 693 (3rd Cir.1989) a Motion to Modify Stay was filed on July 20, 1988. A hearing was originally set for August 15, 1988 but was continued by request of both parties and on one occasion, *sua sponte*, by the court. The hearing was held on September 27, 1988. Subsequent to the hearing the creditor submitted letters of argument to the court. The creditor then claimed a lapse of the stay under Section 362(e). On November 23, the court denied the Motion for Modification of the Automatic Stay and ordered that the stay provisions of Section 362(a) would continue in effect until further orders of the court. The district court affirmed the bankruptcy court and rejected creditor's contention

that the stay expired by operation of law for failure to render any decision within 30 days of the hearing. The court found the post-hearing submissions by the creditor amounted to substantive comment to which debtor had a right to respond. The court also decided the thirty day period did not begin to run until the hearing had concluded. The Court of Appeals found that the creditor's submission of letters did not necessarily require a delay beyond the time constraints of Section 362(e). The court noted that there are situations[5] where a creditor's own actions were clearly inconsistent with an intention on his part to insist on his rights under Section 362(e) and Bankruptcy Rule 4001(a)(2), thereby impliedly waiving those rights.

### D. What is the Effect of Creditor Requesting Alternative or Additional Relief?

Debtor further argues that by including a request for other relief, here abandonment, movant waived the thirty-day hearing requirement, citing *In re Small*, 38 B.R. 143 (Bkrtcy.D.Md.1984). In that matter, the creditor filed a "MOTION FOR RELIEF FROM AUTOMATIC STAY AND, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION AND TO FIX TIME FOR ASSUMPTION OR REJECTION OF LEASE." The court held that "[b]y combining the alternative requests for relief in a single motion, [creditor] waived any right to a thirty-day hearing on its request for relief from the stay."

In the instant case the movant filed a "MOTION TO LIFT AUTOMATIC STAY AND FOR ABANDONMENT." Although this is not *per se* alternative relief, it is additional relief requiring an affirmative showing under 11 U.S.C. Section 554:

" * * *

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burden-

---

**5.** The court referred to *In re McNeely, In re Small,* and *In re Wilmette Partners,* discussed

herein.

some to the estate or that is of inconsequential value and benefit to the estate." This requires a determination by the Court of whether the property is burdensome or of inconsequential value and benefit to the estate. Also, as provided for in F.R.B.P. Rule 6007:

" * * *

(b) A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate.

(c) ... if a motion is made as prescribed by subdivision (b), *the court shall set a hearing* on notice to the United States trustee and to other entities as the court may direct." (Emphasis added).

Applying the *Small* rationale, a request for such additional relief can be construed as a waiver of any right to a thirty-day hearing on its request for relief from the stay. This determination is well within the Court's jurisdiction. The Fifth Circuit in *Martin,* noted:

"Termination of the automatic stay, however, had no practical effect on the bankruptcy court's authority to exercise control over this property since it remained within the bankrupt's estate. Hence the bankruptcy court's order remains a valid adjudication of the relative lien rights of [the parties] with respect to the properties...."

731 F.2d 1210 at 1214.

The hearing requirements of the Local Rules militate strongly against automatic lapse. These rules are distinguishable from the rules of the Bankruptcy Court for the Western District of Texas discussed in *River Hills.* There, the debtor relied on a provision of the local rules allowing it 20 days to respond. The Fifth Circuit upheld the bankruptcy court's order based on Federal Rule of Civil Procedure 61, applicable to the bankruptcy court under Bankruptcy Rule 9005. In the instant case, there is no such order.

Further, the request for additional relief in the form of abandonment leads to the conclusion of a waiver of the benefits Sec-

tion 362(e). 11 U.S.C. Section 554 contains no provision for automatic relief.

### E. Conclusion regarding Automatic Lapse

■ This Court concludes that when CNB set the hearing date beyond the thirty day period, simultaneously requesting additional relief, it waived the benefit of Section 362(e); and there was no lapse of the stay.

Having reached that conclusion, these Reasons need not address the due process arguments of the debtor and Mrs. Anderson, or the Court's ability to reimpose the stay under 11 U.S.C. Section 105 or otherwise. However, the Court is compelled to make some personal observations regarding the circumstances surrounding the filing of the instant motion.

This writer presently sits in the Shreveport Division of the Western District only occasionally. The last Shreveport hearing date preceding the filing of the instant motion was February 5, 1992. On that date, this Court held a hearing on a motion concerning property located adjacent to the subject property. Judge Callaway had likewise recused himself from the handling of that motion. Shortly after that hearing, CNB's attorney inquired concerning the next available Shreveport hearing date. The date of March 31, 1992 was furnished by this office to counsel and Judge Callaway's Office. Accordingly, the hearing was noticed prior to the recusal order being signed by Judge Callaway. The Court was not apprised that any motion had been filed.

The Fifth Circuit, in *River Hills,* noted that "... the Bankruptcy Code imposes a duty upon the court to act within the appropriate time limit, [but] it is the debtor's burden to call the issue to the Court's attention if it desires that the stay be continued...." This Court does not shirk from its duty, but notes only that it works a particular hardship on a judge temporarily assigned to another division. That judge has no readily accessible means of verifying the actual date of filing of a motion other than the computer docketing system.

The undersigned is permanently assigned to the Lake Charles and Alexandria Divisions. Due to a vacancy in the Opelousas/Lafayette Division, all those cases are temporarily statistically reassigned to the undersigned.[6] Fortunately, that workload is shared with a visiting judge. Nevertheless, monitoring the filings in over 4000 cases is at best a difficult task. Under these circumstances, one cannot preclude the possibility of a party filing a motion, noticing the same for a hearing date more than thirty days from the filing date, and then yelling "gotcha." Surely, such a result is unconscionable.

### F. Motion to Strike

■ Some brief consideration of the Motion to Strike is warranted. First, it is less than clear that a Motion to Strike applies to contested matters in a case under the Bankruptcy Code. Federal Rule of Bankruptcy Procedure 9014 adopts portions of rules relating to Adversary Matters. Federal Rule of Bankruptcy Procedure 7012, which adopts portions of F.R.C.P. 12, is not expressly applicable to motion practice in bankruptcy under Rule 9014, absent a directive by the Court. If it were applicable, then the motion here was untimely filed under F.R.C.P. 12(f) which requires its filing prior to filing a response to a pleading.

■ The thrust of the motion is that the hearing was set "without any input on behalf of Debtor or Debtor's Counsel." Nothing in the Local Rules requires such input. Further, the motion asserts that "[t]he hearing date was set by the Court and noticed by counsel for CNB." Under Local Rule 2.1(B), the scheduling of a motion is the responsibility of the Clerk of the Bankruptcy Court. The Motion to Strike, if properly filed, lacks merit and is denied.

These Reasons for Decision will now address the issue of whether relief should be granted under 11 U.S.C. Section 362(d)(2) and abandonment authorized under 11 U.S.C. Section 554.

### II. IS THERE AN EFFECTIVE REHABILITATION IN PROGRESS?

At the commencement of the hearings, after the stipulations were entered, the issue arose as to the burden of proof under 11 U.S.C. Section 362(d)(2). Under the stipulations, particularly number 25, debtor has no equity in the property. Further, the effect of the stipulations is to afford CNB the status of an over-secured creditor.

### A. Burden of Proof

■ Debtor strenuously, at the hearing and in his memorandum, argued that the burden did not shift from the movant (here oversecured) relying on language in *United Savings v. Timbers of Inwood Forest* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) that: "[o]nce the movant under Section 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *Id.* at 375, 108 S.Ct. at 632. This Court, applying the plain language of Section 362(d)(2); held that the test is actually the debtor's equity (or lack thereof), rather than the movant's status. This is the manner in which other post-*Timbers* decisions have posed the inquiry. *See e.g.: Matter of Canal Place Ltd. Partnership*, 921 F.2d 569 (5th Cir.1991).

These reasons now review the evidence to see if the debtor met the burden of establishing that an "effective reorganization" is in progress. In *Canal Place*, that burden is described thusly:

"In deciding whether or not to lift the stay, a majority of courts which have addressed the issue of an 'effective reorganization' require a showing of a reasonable prospect for a successful reorganization within a reasonable time before allowing the stay to remain in effect.... Courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization." 921 F.2d 569 at 577.

As noted in the stipulations, debtor has filed both a plan and a disclosure state-

---

**6.** The Alexandria/Lake Charles Division totals as of January 31, 1992, were 2993 cases and 108 Adversary Proceedings. Opelousas/Lafayette cases and Adversary Proceedings are respectively 1271 and 63.

ment. These Reasons will now review the pertinent portions of same.

B.   Disclosure Statement and Plan

In debtor's disclosure statement filed March 19, 1992, the debtor advises that he proposes a liquidating plan. The disclosure statement describes seven classes of claimants as follows:

Class 1:  Administrative Claims.

Class 2:  Secured Claim of CNB.

Class 3:  Secured Claim of R.A. Mackey.

Class 4:  Secured Claim of Judith Alderson.

Class 5:  Secured Claim of CNB secured by Automobile.

Class 6:  Secured Claim of Deposit Guaranty Mortgage Company.

Class 7:  General Unsecured Claims.

Debtor further describes the plan as follows:

"The success of the Plan is dependant solely on Debtor's ability to prove to the Court the value of its primary assets, property at the intersection of Bert Kouns and I–49 in Shreveport, Caddo Parish, Louisiana and to partition that property in kind among the three Creditors whose debts are secured by that property."

Disclosure Statement, at 6.

"The proposed Plan contemplates a partition of the primary asset of the Debtor, tracts of immovable property located at the intersection of Bert Kouns and I–49 among three Secured Claimants. All other non-exempt or unencumbered property will be liquidated by the Debtor or a designee and the proceeds distributed to Administrative Claimants or to General Unsecured Claims. The Secured Claimants who hold security interests in the two tracts of immovable property, CNB, Robert A. Mackey ('Mackey'), and Judith Alderson ('Alderson') will be satisfied by partition of the other two tracts of immovable property. The Debtor will retain no property other than the exempt property, the automobile secured by a chattel mortgage, and the debt secured by the home in which Debtor lives. If required, Debtor will reaffirm those debts. The home is the separate property of Judith Alderson, Debtor's wife. Neither debt is in default."

*Id.* at 9–10.

The partition proposal is described as follows:

"Class 2.   *Secured Claim of Commercial National Bank in Shreveport.*

The secured claim of CNB is, including attorney's fees as asserted by CNB, in the sum of Six Hundred Thirty Four Thousand Five Hundred Fifty Eight and 39/100 ($634,558.39) DOLLARS, as of April 1, 1992. This claim is fully secured by a mortgage on the two tracts of land located at the intersection of Bert Kouns and I–49 in Shreveport, Caddo Parish, Louisiana. These properties are undeveloped at present, but are valuable properties for potential development at that intersection. The value of the properties is not less than ONE MILLION TWO HUNDRED SIXTY FIVE THOUSAND AND NO/100 ($1,265,000.00) DOLLARS. The Debtor proposes to partition that property among CNB and the other Secured Claimants who hold mortgages on those two tracts. The tract noted as Tract 'IA' on Exhibit 'F' attached hereto is the tract which will satisfy, in full, the debt of CNB. On the Effective Date or when the claim is Finally allowed, whichever is later, the Debtor will transfer to CNB in full satisfaction of its claim, Tract 1A. CNB will, upon transfer, release its mortgage on the additional property."

*Id.* at 12. A copy of the exhibit is attached to the Reasons as an Addendum.

A similar discussion of the treatment of the other secured creditors and other classes follows. Mr. Mackey is described as holding encumbrances in the second and fourth positions each in the original principal amounts of $101,795.00 and having balances of $160,852.00 as of April 1, 1992. Mrs. Alderson's mortgages in the third and fifth positions (erroneously described in the disclosure statement as second and fourth)

are in the original principal amounts of $101,795.00 and $750,000.00 with secured balances as of April 1, 1992, in the amounts of $160,852.00 and $147,886.00 respectively.

Under the plan, "[t]he claim of R.A. Mackey will be satisfied by transferring to R.A. Mackey and Judith Alderson, in undivided proportions to be agreed between them or in separate tracts as agreed between them property from the tracts shown on Exhibit "F" as Tracts "1B" and "2." On the Effective Date or when Finally Allowed, the Debtor will transfer this property to R.A. Mackey and Judith Alderson in full satisfaction of their secured claims." *Id.* at 13.

Both Mackey and Mrs. Alderson will release their mortgages. Mrs. Alderson will also be treated in the Class 7 Unsecured Claim class, for which her undersecured claim is estimated to be in the amount of $394,557.00. Debtor's non-exempt assets estimated to be valued at $2,864.39 will be liquidated to pay to this class. Debtor asserts that Classes 2, 3, 4, and 7 will be treated as impaired.

### C. Summary of the Evidence

Debtor testified that the intention of his plan is to divide the property between the three creditors. He maintained that the effect of CNB purchasing the property at the foreclosure sale would have been to deprive the other secured creditors, Mr. Mackey and Mrs. Alderson, of their secured interests. Alderson testified that neither was in a position to bid at the sale. He further testified that his primary reason for filing was to protect the asset for the creditors. Also, development in the vicinity of the subject property had enhanced its value. Home Depot has announced a purchase of a tract adjacent to the Northeast corner of same for development. He further maintained that Exxon is in negotiations for the purchase of nearby property. Further, announcement has been made concerning Food Line grocery stores placing five locations in the Ark–La–Tex, two of which would be close to the subject property. Mr. Alderson testified that he plans to act as the liquidating agent under the plan.

On cross-examination, debtor acknowledged that the property was acquired in 1980 for speculation. Although unimproved, water and sewage service are available. He admitted there had been no sales out of same, other than takings by the State of Louisiana for construction of I–49. He listed the property for sale in 1990. The realtor handling the listing was suggested by CNB.

In 1989, an agreement was executed between CNB and Alderson whereby the latter agreed to market the property. *See* Exhibits CNB 1 and 2. Mr. Mackey and Mrs. Alderson were also parties. Alderson maintained that he had not breached the agreement. He denied it was his intention under the agreement to give CNB the entirety of the property, but only a part of same. Questioned closely concerning the proposed transfer to CNB, which asserts interest is accruing on the claim, Alderson maintained that the proposed division is a "moving target;" suggesting that if confirmation of the plan is delayed, the "line" moves to "meet the number" at the time the plan is approved. Debtor testified that the classes in the plan were set up by his attorney, and denied that any classification was "gerrymandered" to obtain a favorable vote.

Debtor testified that I–49 opened South of Bert Kouns Industrial Loop in 1990 but that access North of Bert Kouns to the Inner Loop did not occur until Fall, 1991.

Mr. Mackey testified that he was familiar with the debtor's plan. Also, that he was not related to either Mr. or Mrs. Alderson, nor was he involved in any partnerships or corporations with them. He testified that he was prepared to accept the plan. If additional property is needed to satisfy CNB's claim, Mr. Mackey testified that he would agree to an adjustment to the property line between Tracts 1A and 1B and would continue to support the plan. He acknowledged his awareness of the scheduled Sheriff Sale but affirmed his lack of intention to bid. Pressed on whether his intention could change at any point, Mr. Mackey reiterated his intention to support

the plan based on "whatever the appraiser assessed to get [CNB] its full interest."

Mr. Thomas B. Dupree testified regarding his appraisal on the subject property. *See* Exhibit CNB 3. His involvement with the subject property began in 1985 and related to various expropriation proceedings which ultimately settled in 1989. In February and December, 1989, he assigned respective values of approximately $760,000 and $841,000 respectively. In December of 1990, he appraised it at $863,000 and by December of 1991, he appraised same at $972,000.

At times Mr. Dupree appeared confused about his various approaches to valuation. His current appraisal is based on an estimate of "fair value." That term is purportedly based on a definition by the United States Treasury Department, Comptroller of the Currency. The definition is quoted in the exhibit and requires the appraiser to take into account certain cash flows generated by a property when a sale of same is unlikely to occur within 12 months. Mr. Dupree acknowledged that this property has no cash revenue. He appears to have used other definitions such as "market value" or "fair market value" in prior appraisals. While Mr. Dupree ultimately acknowledged that the regulations regarding such definitions may have changed during the time period in question, his shifting ranges for the subject property values were more reflective of market uncertainties than precise definitional distinctions.

Questioned concerning a local news report that the Bert Kouns and I–49 intersection was the "center of the bullseye" for future development, Mr. Dupree was less optimistic.[7] He testified that developments such as Home Depot may in fact "preempt" other retail trade buying power. While he would anticipate increasing development in the area, he was uncertain of the meaning of the "bullseye" phrase in this context.

Mr. Dupree expressed familiarity with the debtor's appraisal. Mr. Dupree's assigned value of the total acreage lying south of Bert Kouns of $767,000 contrasts with the debtors' assigned value of same at $925,000.00. *See* Stipulation Numbers 20 and 21, Exhibit 3 and Alderson 2.

The debtor's appraiser, Mr. Russell, subdivides the southern portion into two tracts and, further, sets forth the values and the debts in the following manner:

| Total Value | | Total Debt | |
|---|---|---|---|
| **Property** | **Market Value** | **Lien** | **Amount of Debt** |
| Tract 1A–5.600 acres | $ 635,000.00 | 1–CNB | $ 634,558.00 |
| Tract 1B–4.400 acres | $ 290,000.00 | 2–RAM | $ 160,823.00 |
| Tract 2–11.616 acres | $ 340,000.00 | 3–JA | $ 160,823.00 |
| Total Value | $1,265,000.00 | 4–RAM | $ 160,823.00 |
| | | 5–JA | $ 374,019.00 |
| | | Total Debt | $1,491,046.00 |

Exhibit, Alderson 2.

Debtor's appraisal is based upon the Comptroller of Currency's definition of "market value," cited as 12 CFR part 34, Section 34.2(f). Mr. Russell further testified that the distinction between "fair value" and "market value" stems from the use of discounts for the former determination, based on the anticipation that property will not be sold within twelve months.

### D. Discussion

■ For purposes of these reasons, it is sufficient to observe that under either appraisal, a transfer of a portion of the property to CNB may be sufficient to extinguish CNB's claim. Under Section

**7.** Debtor also uses this phrase in the disclosure statement at page 8.

1129(b)(2)(A)(iii), a plan is fair and equitable with respect to a class of secured creditors if it provides for the "realization by such holders of the indubitable equivalent of such claims." *In Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989), the Court observed:

"This 'indubitable equivalent' language is at the heart of the current case, and fortunately its application is relatively straight-forward. The key determination is the precise meaning of the phrase 'such claims,' and our inquiry concludes that 'such claims' can only mean *secured* claims. Section 1129(b)(2) is divided into several subsections. Section 1129(b)(2)(A) deals with secured claims, while section 1129(b)(2)(B) deals with unsecured claims. Since the 'indubitable equivalent' language is part of section 1129(b)(2)(A), it deals only with secured claims, and thus section 1129(b)(2)(A)(iii) can be accurately read to state the 'the realization of the holders of secured claims of the indubitable equivalent of their *secured* claims.' "

881 F.2d 1346 at 1350.

The proposed transfer cannot be said to be unworkable on its face. Implicit in CNB's position is the suggestion that its rank as the holder of a first mortgage and vendor's lien somehow entitles it to the transfer of the entirety of the collateral. "In Chapter 11 proceedings, a secured creditor is entitled to its 'bargained-for' rights." *Matter of Peterson*, 95 B.R. 663 (Bkrtcy W.D.Mo.1988).

Here, the 1989 agreement between these parties clearly contemplates the existence of the five encumbrances held by these parties. Mr. Mackey and Mrs. Alderson both acknowledged the subordination of their encumbrances to that of CNB. The agreement provides for the payment to CNB "... in preference to and priority over Mr. Mackey and Mrs. Alderson.... The Bank, Mr. Mackey and Mrs. Alderson further agree that their rights to receive payment of their respective promissory notes from the proceeds of any sale of the Property are and shall be as set forth in Paragraph 6 below:" Exhibit CNB 1 at 4. Paragraph 6 then provides as follows:

"When and as the property or any portion thereof is sold, the proceeds of such sale or sales, net of relator's commission payable to a licensed realtor other than Mr. Alderson which shall exceed six percent (6%) of the purchase price, shall be paid and applied as follows:

a. First, to the Bank to be applied first to interest and then to principal until the note secured by the Bank's Vendor's Lien and Mortgage has been paid in full;

b. Second, to Mr. Mackey to be applied first to interest and then to principal until the Second Note has been paid in full;

c. Third, to Mrs. Alderson to be applied first to interest and then to principal until the Third Note has been paid in full;

d. Fourth, to Mr. Mackey to be applied first to interest and then to principal until the Fourth Note has been paid in full;

e. Fifth, to Mrs. Alderson to be applied first to interest and then to principal until the Fifth Note has been paid in full;

f. Any remaining proceeds shall be retained by Mr. Alderson...."

*Id.* at 5–6.

The agreement expressly acknowledges the successive rights of all three parties. CNB did not bargain for the rights to a windfall. This same succession of rights is provided for in debtor's liquidating plan. This type of plan is expressly contemplated by the Bankruptcy Code. *See* 11 U.S.C. Sections 1123(a)(5); 1129(a)(11); *Sandy Ridge, supra.* Further, it is clear that this property is not burdensome to this estate. Therefore, abandonment under 11 U.S.C. Section 554 is not appropriate.

It is also noted that debtor has demonstrated by the testimony of Mr. Mackey the anticipated acceptance of this or a similar plan by an impaired creditor under 11 U.S.C. Section 1129(a)(10). Finally, it is noted that a valuation determination made at a hearing under Sections 361–363 is not

necessarily binding on the debtor or creditor at confirmation. *See* Notes on the Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, 5787; *Historical and Revision Notes* to 11 U.S.C. Section 506. While plan feasibility may be considered at a hearing under 11 U.S.C. Section 362(d)(2), *See Canal Place*, 921 F.2d 569, this Court determines that this debtor has met his burden.

Thus, debtor's plan should not be derailed at this juncture without his being afforded an opportunity to seek confirmation. This conclusion is reached notwithstanding some points of concern. First, the "moving target" nature of the proposed transfer is not readily evident from the plan or disclosure statement. Second, the date of the proposed transfer is less than certain. Debtor proposes a transfer to CNB "on the Effective Date or when the claim is Finally allowed, whichever is later...." Treatment of Class 2, *supra*, Stipulation 23. The plan itself defines the "Effective date" as the "1st business day 60 days after the Confirmation Date." The Confirmation Date "Means the date on which any confirmation Order with respect to the Plan becomes a final non-appealable Order." However, the term "Finally allowed" is undefined in the plan, and is not generally a term of art understood in bankruptcy.

## CONCLUSION

For the reasons previously set forth, this Court determines there was no lapse in the automatic stay. The Motion to Strike is denied. Further, the Objections to the Motion to Lift the Stay are sustained, and the Motion to Lift Stay and for Abandonment is denied. Accordingly, a separate, conforming order will enter.