**Revised April 19, 1999**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 98-20626
Summary Calendar
_____

In the Matter of:

JORGE A. LENTINO, M.D.,
and
EDUARDO P. LENTINO,
Also Known as EDUARDO PEDRO LENTINO,
Also Known as E.P. LENTION, M.D.,

                                        Debtors.


JORGE A. LENTINO, M.D.,
and
EDUARDO P. LENTINO,
Also Known as EDUARDO PEDRO LENTINO,
Also Known as E.P. LENTION, M.D.,

                                        Appellants,

VERSUS

LOWELL T. CAGE, Trustee,

                                        Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

March 5, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Proceeding *pro se*, Eduardo and Jorge Lentino appeal the district court's decision to lift the automatic stay issued pursuant to 11 U.S.C. § 362(a). Finding no error, we affirm.


I.

This appeal results from a long history of litigation between Jorge and Eduardo Lentino[1] (the "Lentinos") and Cullen Center Bank and Trust ("Cullen").[2] In 1993, Cullen won a judgment against the Lentinos of over $12 million,[3] forcing the Lentinos to file voluntary petitions for bankruptcy relief under chapter 7. These petitions triggered the automatic stay provisions of 11 U.S.C. § 362(a), which prevented Cullen from taking any further action to collect its judgment. Cage, the appellee, was appointed trustee of

---

[1] Marta Lentino, wife of Eduardo Lentino, has also been deeply involved in the litigation, though she was not a party to the original loan agreements between the Lentino brothers and Cullen Bank. She has not filed a notice of appeal and is not a party to this proceeding. Accordingly, we do not consider the Lentinos' claims made on her behalf.

[2] Cullen Center Bank and Trust merged with Frost National Bank in 1993. The Lentinos charge that the district court erred by continuing to name Cullen as a party in the bankruptcy proceedings, but they have not explained why this prejudices their interests.

[3] Cullen alleged fraud, fraudulent transfers, breach of contract, conspiracy, negligence, and negligent misrepresentation. The jury awarded Cullen $1,817,525.42 in actual damages and $2,500,000 in exemplary damages against each of the Lentino brothers, plus attorneys' fees, prejudgment interest, post-judgment interest, and costs of court. The combined judgment against both brothers exceeded $12 million.

those estates.

The Lentinos and the Trustee appealed the state court judgment. The state court of appeals vacated and remanded for retrial. *See Lentino v. Cullen Ctr. Bank & Trust*, 919 S.W.2d 743 (Tex. Civ. AppSSHouston [14th Dist.] 1996, writ denied).

To pursue the remanded case in Texas district court, Cullen then filed a motion in the bankruptcy court seeking relief from the automatic stay. The Trustee and the Lentinos (including Marta) objected to Cullen's motion. The bankruptcy court held two hearings on the motion. In the first hearing, on May 8, 1997, only Marta Lentino appeared, and there was no explanation of Jorge's and Eduardo's absence. The motion was carried to the second hearing scheduled for June 3, 1997. Before this hearing, however, Eduardo and Marta Lentino withdrew their objections to the Cullen motion, and Cullen agreed to abate its motion until June 17, 1998, to allow the Trustee to retain special counsel to represent the Lentino estate. This promising settlement was foiled by Jorge Lentino, who on June 2, 1997, filed objection to lifting the stay.

The district court withdrew its reference to the bankruptcy court and held a status hearing on June 5, 1997. Jorge Lentino did not attend this hearing, and neither Marta nor Eduardo Lentino objected to the Trustee's abatement plan. Accordingly, when the Trustee was authorized to retain counsel in the *Cullen* litigation on June 11, 1998, the district court lifted the automatic stay.

3

The Lentinos appeal only the lifting of the stay.

## II.

Although the parties have not addressed the question whether we have jurisdiction to review a district court's lifting of an automatic stay, "we are obligated to examine the basis for our jurisdiction, *sua sponte*, if necessary." *Williams v. Chater*, 87 F.3d 702, 704 (5th Cir. 1996). The posture of this case is somewhat unusual. Normally, we would assert jurisdiction under 28 U.S.C. § 158(d), which authorizes appellate review of orders of district courts sitting in their appellate capacity over orders of bankruptcy courts. Because the district court withdrew its reference to the bankruptcy court and issued its order lifting the automatic stay while exercising its original, rather than appellate, jurisdiction, however, we can assert jurisdiction, if at all, only on the basis of 28 U.S.C. § 1291, which governs appeals of final orders from district courts.[4]

Asserting jurisdiction under § 1291 might have made a difference, because this court's determination of whether an order is final (and therefore appealable) is more liberal in the

---

[4] *See Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 353 (5th Cir. 1997).

bankruptcy context.[5]  Thus, while this court has already held that the lifting of a § 362(a) automatic stay is a final order appealable under § 158(d),[6] we have not considered its appealability under § 1291.

We have, however, decided to apply the liberalized final judgment rule of § 158(d) when appellate jurisdiction is based on § 1291.[7]  Therefore, because we would hold the lifting of an automatic stay appealable under § 158(d), we also conclude that it is appealable under § 1291.[8]

### III.

We review a bankruptcy court's lifting of an automatic stay for abuse of discretion.[9]  Neither party briefs the question whether the same standard of review applies to a district court exercising its original bankruptcy jurisdiction, and we have found no caselaw from this circuit that gives guidance.  We nevertheless conclude that the district court's decision to lift an automatic

---

[5] *See Foster Sec., Inc. v. Sandoz (In re Delta Servs. Indus.)*, 782 F.2d 1267, 1269 (5th Cir. 1986) (pointing out that courts properly view finality more flexibly under § 158(d) than under § 1291).

[6] *See Chunn v. Chunn (In re Chunn)*, 106 F.3d 1239, 1241 (5th Cir. 1997).

[7] *See Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co. (In re Cajun Elec. Power Co.)*, 69 F.3d 746, 748 (5th Cir.), *opinion on rehearing*, 74 F.3d 599 (5th Cir. 1996) (per curiam).

[8] *Accord Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.)*, 907 F.2d 1280 (2d Cir. 1990).

[9] *Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1266 (5th Cir. 1997).

stay enjoys the same deferential standard as does a similar decision from a bankruptcy court. In doing so, we follow other circuits that have applied the abuse-of-discretion standard in reviewing a district court's lifting of an automatic stay.[10]

### IV.

The Lentinos raise only one challenge to the lifting of the automatic stay. They argue that the court erred by failing to provide sufficient notice that lifting the stay was under consideration and by failing to hold a hearing. They rely on the language in § 362(d) governing the requirements for the lifting of an automatic stay: "On request of a party in interest and after notice and hearing, the court shall grant relief from the stay . . . ."

Unfortunately for the Lentinos, this court has refused to construe the phrase "after notice and a hearing" to require a hearing in every case in which relief is sought from an automatic stay.[11] Rather, we have followed the Bankruptcy Code's definition of "after notice and a hearing" to mean "after such notice is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."

---

[10] *See Sonnax*, 907 F.2d at 1288. ("[T]he lifting of the stay is committed to the sound discretion of the court . . . ."); *see also Mitsubishi Motors v. Soler Chrysler-Plymouth*, 814 F.2d 844, 847 (1st Cir. 1987) ("[W]e are left with the troublesome question of whether the district court abused its discretion by vacating the stay without first holding a hearing.")

[11] *See River Hills Assocs., Ltd. (In re River Hills Apartments Fund)*, 813 F.2d 702, 706 (5th Cir. 1987).

11 U.S.C. § 102(1)(A) (1986).

We agree with the Trustee that nothing in the record suggests that the Lentinos were without opportunity to object to the lifting of the stay. They received notice of both hearings before the bankruptcy court and notice of the status hearing before the district court.

Eduardo Lentino attended the June 9, 1997, status hearing. At that time, both Lentinos had received notice of Cullen's request to lift the stay, and Eduardo had already withdrawn his objection in hearings before the bankruptcy court. Jorge Lentino's notice of objection was filed on June 2, 1997, but he failed to attend the June 9 status hearing, despite Eduardo's attempts to contact him.

The district court did not lift the stay until over a year later, on June 12, 1998. Under the Bankruptcy Code's flexible definition of "notice and hearing," the district court did not abuse its discretion when it lifted the automatic stay a full year after first notifying the Lentinos and holding a status hearing.

AFFIRMED.[12]

---

[12] We agree with the Trustee's characterization of this appeal as mostly frivolous. We note that the Lentinos have filed a number of other appeals in this court. Although we have not reviewed the claims in those appeals, we remind the Lentinos that "one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).